COMMISSIONER OF TRANSPORTATION *v.* VINCENT P. LAROBINA
(AC 24780)

Lavery, C. J., and Schaller and Peters, Js.

Argued March 31—officially released October 18, 2005

*Vincent P. Larobina*, pro se, the appellant (defendant).

*Drew S. Graham*, assistant attorney general, with whom, on the brief, was *Richard Blumenthal*, attorney general, for the appellee (plaintiff).

*Opinion*

LAVERY, C. J. The defendant, Vincent P. Larobina, appeals from the judgment of the trial court following a reassessment of the damages due to the defendant for a partial condemnation of a portion of his real property. The defendant claims on appeal that the court improperly (1) failed to give effect to the express language describing the subject taking in the notice of condemnation, (2) failed to declare, sua sponte, that the taking was void ab initio pursuant to General Statutes (Rev. to 1999) § 13a-73 (b) and (3) assessed the damages due without applying generally accepted methods of valuation. We affirm the judgment of the trial court.

The following facts, as found by the court, are relevant to the resolution of the claims raised. On February 11, 1999, the plaintiff, the commissioner of transportation (commissioner), for the purpose of acquiring an easement over a portion of the defendant's property for the construction of a sidewalk in connection with a road widening project, filed with the clerk of the Superior Court a notice of condemnation and assessment of damages. See General Statutes (Rev. to 1999) § 13a-73 (b);[1] General Statutes § 13a-

---

[1] General Statutes (Rev. to 1999) § 13a-73 (b) provides in relevant part that "[t]he commissioner may take any land he finds necessary for the layout, alteration, extension, widening, change of grade or improvement of any state highway . . . and the owner of such land shall be paid by the state for all damages and the state shall receive from such owner the amount or value of all benefits resulting from such taking, layout, alteration, extension, widening, change of grade or other improvement. . . . The assessment of such damages and of such benefits shall be made by the commissioner and filed by him with the clerk of the superior court in the judicial district in which the land affected is located, and such clerk shall give notice of

98e.[2] The notice referenced a map and stated specifically that the property interest taken was "a full and perpetual easement to construct sidewalk within an area of 269 square feet, located between and opposite Stations 19+19.65 and 19+75.88 right, BASE LINE, Present Grove Street, as shown on said map."

The property subject to the easement is located at 111-113 Grove Street in Stamford and the defendant is its record owner. The premises consist of a four unit residential dwelling on 0.21 acres of land. The easement runs along the front of the property along Grove Street for approximately fifty-four feet and at a depth of five feet. The commissioner assessed damages for the taking of the easement in the amount of $4030, later revised to $4100.

On or about August 3, 1999, after receiving notification of the taking, the defendant appealed from the commissioner's assessment of damages and, on May 15, 2003, a hearing was held before the court. See General Statutes (Rev. to 1999) § 13a-76.[3] The court heard testi-

such assessment to each person having an interest of record therein . . . . Upon filing an assessment with the clerk of the superior court, the commissioner shall forthwith sign and file for record with the town clerk of the town wherein such real property is located a certificate setting forth the fact of such a taking, a description of the real property so taken and the names and residences of the owners from whom it was taken. . . ."

[2] General Statutes § 13a-98e provides that "[t]he commissioner may acquire by purchase, gift or condemnation in the name of the state such real property or rights of access to and egress from land abutting any federal surface transportation urban program roadway or facility as is necessary to construct and maintain the improvements to any such roadway or facility in the same manner and with like powers as authorized and exercised by said commissioner in acquiring real property or rights of access to and egress from land abutting state highways for highway purposes."

[3] General Statutes (Rev. to 1999) § 13a-76 provides in relevant part that "[a]ny person claiming to be aggrieved by the assessment of such special damages or such special benefits by the commissioner may, at any time within six months after the same has been so filed, apply to the superior court for the judicial district within which such land is situated or, if said court is not in session, to any judge thereof for a reassessment of such damages or such benefits so far as the same affect such applicant, and said

mony from each of the parties' appraisers and received into evidence the appraisers' reports. Following the hearing, the court viewed the defendant's property and, thereafter, in a memorandum of decision filed October 15, 2003, reassessed the damages due at $8380 plus interest and costs.

The court made a number of subordinate findings before reaching the reassessment of damages. It noted that the easement taken was not utilized subsequently for a sidewalk by being poured or paved, but instead was simply graded and reserved for a future sidewalk in the event that a need for one arose. The court considered that the recent reconstruction of Grove Street had been very extensive and opined that the chance of "such a need occurring in the foreseeable future is extremely remote."[4]

The court also found that the easement did not affect the aesthetics of the property, nor did it bring the preexisting sidewalk or the roadway closer to the house. It noted further that the defendant retained the fee to the easement area and could utilize the area, provided he

court or such judge, after causing notice of the pendency of such application to be given to said commissioner, shall appoint a judge trial referee to make such reassessment of such damages or such benefits. Such trial referee, having given at least ten days' notice to the parties interested of the time and place of hearing, shall hear the applicant and said commissioner, shall view the land and take such testimony as such trial referee deems material and shall thereupon reassess such damages and benefits so far as they affect such applicant. . . ."

[4] In response to the defendant's motion for articulation, the court explained that it was aware of the magnitude of and expense involved with the Grove Street project from the exhibits and the testimony presented, as well as from its personal experience and observation of the project, which was in the vicinity of the courthouse. According to the court, "[c]onsidering the amount of resources already expended to upgrade and widen Grove Street, and the project finally having been successfully completed, the chances of the department of transportation revisiting the project in the foreseeable future and installing a new sidewalk in front of 111-113 Grove Street that would impact the easement in question are infinitesimal."

did not interfere with the easement. Moreover, for purposes of meeting zoning requirements, the square footage of the area still could be included as the defendant's property.

The court also summarized and evaluated the testimony and reports of the parties' respective appraisers. After describing the approach to assessment used by the defendant's appraiser, Allan Glucksman, which led to a total damages figure of $93,350,[5] the court stated that it had been "afforded little weight." The court found the damages estimated by Glucksman to be "a bit extravagant for the taking of the relatively minor and nonintrusive easement in question," and noted that "Glucksman's testimony and report were often inconsistent and inaccurate and [further, that] he speculated, with no basis in fact, on several occasions with regard to permanent damages."

In summarizing the methodology employed by the commissioner's appraiser, Raymond Boucher, which had led to the commissioner's damages figure of $4100,[6] the court noted that "Boucher did not appraise the multiple family house on the property because he was of the opinion that the easement had no effect whatsoever on the utility or value of [the defendant's] remaining unencumbered land or the building and that consequently there were no severance damages and the value of the 269 square feet taken for the easement was the only thing in question." In a footnote, the court,

---

[5] That figure was comprised of $7000 for the value of the easement, $67,200 for lost rents, $3450 for repairs for purported damage to the property from the construction and $15,700 for temporary damages allegedly flowing from the construction. Glucksman valued the easement area itself at $25 per square foot.

[6] That rounded figure was comprised of $3631.50 for the value of the easement and $435.96 for the depreciated value of the walkway, lawn and a planting within the easement area. Boucher valued the easement area itself at $15 per square foot and recommended that a 10 percent discount be applied because the fee was not taken.

citing case law, acknowledged that ordinarily, "damages recoverable for a partial taking are . . . measured by determining the difference between the market value of the whole tract as it lay before the taking and the market value of what remained of it thereafter . . . ." (Internal quotation marks omitted.) The court explained, however, that "in this instance, where the commissioner's appraiser determined that there were no severance damages and his appraisal of the amount of damages was limited to the value of the land and certain improvements taken for the easement, the damages figure would be exactly the same as the [difference between] the before and after figure[s]."

Ultimately, the court did not adopt either the $15 per square foot value for the easement utilized by Boucher or the $25 per square foot value utilized by Glucksman; see footnotes 5 and 6; but concluded instead that $20 per square foot was an appropriate measure. That figure, applied to the 269 square feet of the easement, resulted in a land damages assessment of $5380. The court disregarded Boucher's recommendation that a 10 percent discount be applied because only an easement had been taken and awarded the defendant the entire fee value for the easement area. The court also concluded that the defendant was entitled to $500 for the depreciated value of a walkway, lawn and plantings that had been in the easement area, a figure somewhat higher than that arrived at by Boucher. See footnote 6.

Regarding damages to the remainder of the property resulting from the taking of the easement, the court "for the most part" agreed with Boucher that there were no severance damages. It allowed, however, that if the easement area eventually was paved, "it could have a negative effect on the value of the [defendant's] remaining property" and that "a future potential buyer might be wary of such a thing, and it could possibly detract from the sales price." The court concluded that

the defendant should be compensated for that potential eventuality and that $2500 was fair compensation.

The court found explicitly that the defendant had failed to establish a loss of present or future rents attributable to the easement. Moreover, he failed to prove that temporary damages were warranted due to the inconvenience generated by the construction project. Judgment was rendered in accordance with the court's reassessment of damages and, thereafter, the defendant appealed. Additional facts will be noted as necessary.

I

The defendant claims first that the court, in reassessing damages, improperly failed to give effect to the express language of the easement as described in the notice. We disagree.

The defendant's argument, essentially, is that by finding that the possibility of the sidewalk being paved over in the future was extremely remote, the court effectively rewrote the description of what was taken and, as a consequence, necessarily undervalued the associated damages. According to the defendant, the court's rejection of Glucksman's opinion as to severance damages stemmed from the finding that the construction of a new sidewalk was unlikely. He urges that because Glucksman "assessed damages based on the explicit terms of the easement, that appraisal could only be discredited as against the [court's] reconstruction of the same." The defendant argues further that the court failed to adhere to the principle that a condemnee is to be compensated for the actual legal rights that the condemnor has acquired, regardless of whether those rights presently are being exercised. We are not convinced.

"Damages recoverable for a partial taking are ordinarily measured by determining the difference between

the market value of the whole tract as it lay before the taking and the market value of what remained of it thereafter, taking into consideration the changes contemplated in the improvement and those which are so possible of occurrence in the future that they may reasonably be held to affect market value. . . . Valuation is a matter of fact to be determined by the trier's independent judgment." (Citations omitted; internal quotation marks omitted.) *Cappiello* v. *Commissioner of Transportation*, 203 Conn. 675, 679–80, 525 A.2d 1348 (1987). Accordingly, the court's factual findings as to valuation must stand unless they are clearly erroneous. Id., 680.

"When only a portion of a party's property is taken, the landowner is entitled not only to compensation for the value of the property taken, but also to severance damages for the diminution in the value of the landowner's remaining property that the severance of a portion of the property causes." *Alemany* v. *Commissioner of Transportation*, 215 Conn. 437, 444, 576 A.2d 503 (1990). "[I]n highway easement cases . . . the landowner is entitled to compensation for severance damages that might result from prospective uses of the easement as well as the damages immediately flowing from the presently contemplated highway improvement project for which the land was taken." Id., 445. "[I]t is proper to consider such use of the land taken as would in any reasonable anticipation be most disadvantageous to the landowner." (Internal quotation marks omitted.) Id. "[T]he landowner need not demonstrate that a more detrimental future use is likely to occur; all possibilities that would affect market value are relevant."[7] Id.

---

[7] But see *Andrews* v. *Cox*, 127 Conn. 455, 462, 17 A.2d 507 (1941) ("[o]n the other hand, if the possibility of the use of the land taken, to a certain extent or in a certain way, is so remote that it would not enter into the contemplation of a prospective seller or purchaser, that use is not to be regarded in determining the market value of the property, or if the likelihood of such use, while not so remote as to be entirely disregarded would affect the price only to a limited extent, damages should be determined upon that basis").

After reviewing the evidence and the memorandum of decision, we conclude that the court properly adhered to the foregoing rule. Specifically, as to the easement area itself, the court clearly reassessed damages on the basis of a sidewalk having been constructed there. That portion of the damages was an amount well in excess of that recommended by Boucher, and Boucher's testimony indicated that in reaching his estimate, he assumed that the sidewalk had been constructed.[8] Moreover, contrary to Boucher's recommendation, the court awarded damages on the basis of the entire value of the easement area, as if the fee had been taken. It is apparent that full use of the easement area thereby was assumed.

Regarding severance damages, although the court stated that it considered actual construction of the sidewalk a remote possibility, it nevertheless included in its reassessment an amount to compensate the defendant for diminution in value to the remainder of his property. In making its award, the court presumed that the eventuality it considered unlikely in fact would occur and concluded that the defendant "should be compensated." Compare *Alemany* v. *Commissioner of Transportation*, supra, 215 Conn. 446 (reversing damages reassessment where "court focused *solely* on the effects of the current highway improvement project, while *excluding* the potential impact of future, more intensive uses of the easement on the value of the plaintiff's remaining property" [emphasis added]). There is no indication from the memorandum of decision that the court discounted that figure on the basis of the unlikelihood of the sidewalk's being paved.[9]

---

[8] Boucher testified specifically that he "appraised [the easement] area as if a sidewalk is on that . . . [i.e.] [a]s if the sidewalk has been constructed there." In response to the defendant's questioning, he thereafter confirmed that in preparing his report, he assumed that "[t]here is a sidewalk in the easement area . . . ."

[9] We note that although the defendant filed a motion for articulation, he did not request therein that the court state whether its belief that construction of

The defendant's argument, in essence, that the court could have rejected Glucksman's estimate of severance damages only due to improper considerations of remoteness of use, is not convincing. Rather, the court's other findings suggest that the reason the court disregarded that estimate was because it found it to be without factual support and also because it found Glucksman in general to be severely lacking in credibility. Glucksman's estimate of severance damages consisted of $67,200 in lost rents; the court explicitly found that lost rents had not been proven. Additionally, the court characterized Glucksman's testimony and report overall as inconsistent, inaccurate and speculative.

In weighing the testimony of the appraisers, the court's "duty is to accept that testimony which appears to be more credible. . . . The acceptance or rejection of the opinions of the expert witness is a matter peculiarly within the province of the trier of fact and its determination will be accorded great deference by this court." (Citations omitted; internal quotation marks omitted.) *Feigenbaum* v. *Waterbury*, 20 Conn. App. 148, 152, 565 A.2d 5 (1989). After reviewing Glucksman's report and his testimony, we see no reason not to defer to the court's assessment and rejection thereof.

To begin, Glucksman arrived at his estimate of lost rents by capitalizing at 10 percent the figure of $6720, which is the amount by which he concluded the defendant's annual rental income would decrease as a result of the taking. The $6720 figure, however, was supported only by Glucksman's conclusory "belie[f] that rental income will [sustain] a 12% decrease," and not by any underlying quantitative analysis relating specifically to the property and the effect of the changes. The portion

a sidewalk was unlikely affected its determination of the amount of severance damages due. Rather, the defendant requested only that the court identify what evidence it credited to find that construction of the sidewalk was unlikely. See footnote 4.

of Glucksman's report prefacing, and purportedly establishing, the 12 percent decrease, consists of a generalized, qualitative narrative discussing the negative effects of pollution, noise and inconvenience caused by vehicular traffic, citing to two newspaper articles as authority. Glucksman conceded at trial, however, that he had no statistics or documentary evidence regarding the traffic volume on Grove Street.

"[T]he weight of an [expert appraiser's] opinion is materially affected by the substantiating factual data that is introduced into evidence." See 5 P. Nichols, Eminent Domain (3d Ed. Rev. 2004, J. Sackman ed.) § 23.09, p. 23-125. "Some courts have stated that the opinion must be rejected in the absence of such supporting evidence, or in the event the supporting evidence is insufficient to justify the opinion." Id., § 23.07 [1], pp. 22-72 through 22-74. "An opinion based on mere conjecture or guesswork has no probative value and is insufficient to sustain a [damages award]." Id., § 23.09, pp. 23-125 through 23-126; see also 27 Am Jur. 2d 217, Eminent Domain § 591 (2004) ("[n]o weight may be accorded to an expert opinion which is totally conclusory in nature and which is unsupported by any discernible, factually based chain of underlying reasoning"). Given the foregoing, the court understandably declined to adopt Glucksman's estimate as to lost rents.

Additionally, in conducting his before and after analysis, Glucksman used the comparable sales approach to reach the before figure, but then used an income approach to arrive at the after figure. That clearly was improper because "[w]here the before and after approach is used, both the 'before' and the 'after' valuations must be calculated by the same method . . . ." (Citation omitted.) *Mil-Pine Plaza, Inc.* v. *State*, 72 App. Div. 2d 460, 462, 424 N.Y.S.2d 937 (1980). That inconsistency could only have lessened Glucksman's credibility.

Furthermore, in deriving an estimate for the market value of the property before the taking by using the comparable sales approach, Glucksman overstated the gross living area of the defendant's building by nearly one third. He also listed the age of the structure as fifty-two years, although it was built in 1897. When Glucksman assigned a per square foot value to the easement area, he chose $25 although his comparables ranged between $15.62 and $22.96. In sum, any one of those discrepancies would tend to lessen the credibility of Glucksman's opinion. Taken together, it is not difficult to understand why the court "afforded [the opinion] little weight."

In a condemnation matter, it is the condemnee's burden "to show loss or damages in excess of the condemnor's figures." 8A P. Nichols, Eminent Domain (3d Ed. Rev. 2005, P. Rohan & M. Reskin eds.) § 16.01 [1], p. 16-5. "Severance damages must be shown to a reasonable certainty. They may not be remote, *speculative* or contingent in nature." (Emphasis added.) Id. In evaluating the evidence, the court "has the right to accept so much of the testimony of the experts and the recognized appraisal methods which they employed as he finds applicable; his determination is reviewable only if he misapplies, overlooks, or gives a wrong or improper effect to any test or consideration which it was his duty to regard." (Internal quotation marks omitted.) *Cappiello* v. *Commissioner of Transportation*, supra, 203 Conn. 680.

We conclude that the court rejected Glucksman's estimate of severance damages not because of an improper consideration that full use of the easement was unlikely, but rather, because that estimate was speculative and the appraiser generally lacked credibility. Accordingly, the damages award was not clearly erroneous.

## II

The defendant argues next that the court, after finding that the chances that a sidewalk would be constructed in the easement area were extremely remote, improperly failed to declare the condemnation void ab initio. According to the defendant, it necessarily followed from the court's finding that the condemnation of the easement was not "reasonably necessary" as is required for a lawful taking,[10] and, therefore, the court, "sua sponte, should have ruled the easement null and void" and dismissed the matter for want of subject matter jurisdiction. We disagree.

We first note our standard of review for claims implicating a court's subject matter jurisdiction. "[B]ecause [a] determination regarding a trial court's subject matter jurisdiction is a question of law, our review is plenary." (Internal quotation marks omitted.) *Peters* v. *Dept. of Social Services*, 273 Conn. 434, 441, 870 A.2d 448 (2005). "[T]he question of subject matter jurisdiction, because it addresses the basic competency of the court, can be raised by any of the parties, *or by the court, sua sponte,* at any time." (Emphasis in original; internal quotation marks omitted.) *Louis Gherlone Excavating, Inc.* v. *McLean Construction Co.*, 88 Conn. App. 775, 779–80, 871 A.2d 1057 (2005). "Subject matter jurisdiction involves the authority of the court to adjudicate the type of controversy presented by the action before it.

---

[10] The defendant refers to language in General Statutes (Rev. to 1999) § 13a-73 (b) that authorizes the commissioner to "take any land he finds *necessary* for the . . . widening . . . of any state highway . . . ." (Emphasis added.) Additionally, he cites case law indicating that the standard for determining whether a particular condemnation is improper "is whether the taking is 'reasonably necessary' given the approved development plan"; *Bugryn* v. *Bristol*, 63 Conn. App. 98, 108, 774 A.2d 1042, cert. denied, 256 Conn. 927, 776 A.2d 1143, cert. denied, 534 U.S. 1019, 122 S. Ct. 544, 151 L. Ed. 2d 422 (2001); and that "[a] taking that is purely speculative is not reasonably necessary." *Kelo* v. *New London*, 268 Conn. 1, 96, 843 A.2d 500 (2004), aff'd, 545 U.S. 469, 125 S. Ct. 2655, 162 L. Ed. 2d 439 (2005).

. . . [A] court lacks discretion to consider the merits of a case over which it is without jurisdiction . . . ." (Internal quotation marks omitted.) *Peters* v. *Dept. of Social Services*, supra, 441.

We agree that the defendant has raised a claim relating to the court's jurisdiction, but not in the manner that he alleges. The present action is one for a reassessment of damages brought pursuant to § 13a-76, as clearly evidenced by the defendant's response to the commissioner's notice, which was captioned, "Appeal from the Assessment of Damages and Benefits by the Commissioner of Transportation of the State of Connecticut," and by his subsequent motion to refer the matter to a referee in which he states that he "filed the instant appeal pursuant to . . . § 13a-76, seeking a reassessment of the damages." It is well established by our case law that the scope of a § 13a-76 proceeding is limited to a reassessment of the damages offered by the commissioner for a taking. *St. John* v. *Commissioner of Transportation*, 172 Conn. 234, 240, 374 A.2d 190 (1977); *Plunske* v. *Wood*, 171 Conn. 280, 284, 370 A.2d 920 (1976); *Munson* v. *MacDonald*, 113 Conn. 651, 155 A. 910 (1931). If a condemnee wants to challenge the validity of the condemnation, he or she must bring a separate action for injunctive relief. See *Fleming* v. *Cox*, 11 Conn. Sup. 39, 52 (1942) ("property owner [concerned about the validity of a condemnation] is remitted to an action in equity and is entitled to relief only if he can sustain the burden of proving that the condemnation is one tainted by unreasonableness, bad faith or the abuse of the power confided to the condemnor"); see, e.g., *Bugryn* v. *Bristol*, 63 Conn. App. 98, 774 A.2d 1042 (consolidated separate actions on appeal), cert. denied, 256 Conn. 927, 776 A.2d 1143, cert. denied, 534 U.S. 1019, 122 S. Ct. 544, 151 L. Ed. 2d 422 (2001).

Pursuant to the foregoing, if the defendant wanted to challenge the validity of the taking of the easement

area, he needed to raise that issue in a separate action for injunctive relief.[11] Even if his claim were well founded, a matter on which we do not opine, the court was without jurisdiction in a § 13a-76 proceeding to declare the taking null and void. Accordingly, the defendant's claim fails.

## III

The defendant's last claim is that the court improperly failed to measure all damages resulting from the condemnation by not applying generally accepted valuation methods. Particularly, the defendant again contests the court's award regarding severance damages and argues that the court did not apply the before and after rule. We disagree.

As in his first claim, the defendant again contests the court's findings as to the credibility of the expert appraisals and determination of damages. We will not reverse those findings unless they are clearly erroneous. See *Cappiello* v. *Commissioner of Transportation,* supra, 203 Conn. 679–80. We note additionally that "[i]n a condemnation proceeding, a trial court must make an independent determination of value and fair compensation in light of all the circumstances. . . . [B]ecause each parcel of real property is in some ways unique, trial courts must be afforded substantial discretion in choosing the most appropriate method of determining the value of a taken property." (Citation omitted; internal quotation marks omitted.) *Albahary* v. *Bristol,* 84 Conn. App. 329, 342, 853 A.2d 577, cert. granted on

[11] The defendant's claim in his reply brief that he sought injunctive relief to rescind the easement prior to trial is unavailing. For the reason we have explained, if the defendant in fact had pursued such relief in the present matter, it would have been improper. As evidenced by a hearing transcript he submitted as an exhibit in the trial proceedings, however, the defendant apparently did seek such an injunction properly in a separate action, which is not the subject of this appeal. If he is dissatisfied with the outcome of that matter, he must bring a separate appeal from the judgment rendered therein.

other grounds, 271 Conn. 924, 925, 859 A.2d 576 (2004). Although helpful to the trier, "opinion evidence is advisory only." 5 P. Nichols, Eminent Domain (3d Ed. Rev. 2004, J. Sackman ed.) § 23.01, p. 23-11.

As previously explained, in the case of a partial taking, damages ordinarily are measured by calculating the difference between the fair market value of the entire property before the taking and the fair market value of all that remains thereafter. *Cappiello* v. *Commissioner of Transportation*, supra, 203 Conn. 679. The purpose of the before and after rule is to ensure that the condemnee is fully compensated for severance damages when the taking results in diminution of the value of the property remaining postcondemnation. *Laurel, Inc.* v. *Commissioner of Transportation*, 180 Conn. 11, 36, 428 A.2d 789 (1980) (when before and after rule applied, "[s]everance damages to the parcel remaining are thereby included"); see also 8A P. Nichols, Eminent Domain (3d Ed. Rev. 2005, P. Rohan & M. Reskin eds.) § 16.01[2], p. 16-6.

It is true that in this case, the court did not express its findings as to damages in terms of total before and after market values for the defendant's property. That was largely unavoidable, however, given the nature of the evidence. Specifically, the only evidence regarding the market value of the defendant's structure was the estimate of Glucksman; because Boucher did not believe that the sidewalk easement resulted in any severance damages, his appraisal addressed only the value of the land taken and incidental damage to the defendant's lawn, walkway and planting. Glucksman did assign precondemnation and postcondemnation market values to the defendant's entire property, including the structure. Due to the multiple irregularities in Glucksman's appraisal; see part I; the court concluded that it was entitled to "little weight." In particular, Glucksman improperly used two different methods of

valuation for determining the before and after values of the structure, thereby rendering his estimates essentially useless. See *Mil-Pine Plaza, Inc.* v. *State*, supra, 72 App. Div. 2d 462. Accordingly, there simply was no competent evidence before the court regarding the value of the structure itself. When faced with the constraints of incomplete information, a court cannot be faulted for fashioning an award as equitably as possible under the circumstances. See *Brycki* v. *Brycki*, 91 Conn. App. 579, 589–590, 881 A.2d 1056 (2005).

Additionally, the court's damages determination properly took into account the consideration that the before and after rule is intended to effectuate, namely, that in a partial taking, any diminution in value to the remainder ought to be compensated. In awarding severance damages of $2500, the court properly made an independent determination of what was fair under the circumstances, necessarily relying on its "general knowledge and its viewing of the premises." *D'Addario* v. *Commissioner of Transportation*, 180 Conn. 355, 366, 429 A.2d 890 (1980). It is apparent from the record that the defendant simply did not meet his burden of proving that additional amounts were warranted.[12] See

[12] Similarly, the defendant has not demonstrated on appeal that a proper, nonspeculative before and after analysis would result in a materially different amount of severance damages than that awarded by the court. As explained by a leading commentator, there are essentially two formulas used by courts to determine damages in partial takings cases: "(1) The before and after rule; and (2) the value of the part taken, plus severance damages to the remainder." 4A P. Nichols, Eminent Domain (3d Ed. Rev. 2004, J. Sackman ed.) § 14.02 [1] [a], p. 14-30. Although Connecticut courts typically employ the former approach, the court here, on the evidence, was forced to utilize the latter one. Nevertheless, as noted by a leading commentator, "[a] number of courts have commented on the lack of clear distinction between the two approaches"; id.; and, in any event, "[t]he two measures of damage should be roughly equivalent, since the goal of both is identical: *i.e.*, 'to put the landowner in as good a pecuniary position as if no taking had occurred.' " (Emphasis in original.) 8A P. Nichols, Eminent Domain (3d Ed. Rev. 2005, P. Rohan & M. Reskin eds.) § 16.02 [4], pp. 16-16 through 16-17.

8A P. Nichols, Eminent Domain (3d Ed. Rev. 2005, P. Rohan & M. Reskin eds.) § 16.01 [1], p. 16-5.

The defendant cites *Gontarz* v. *Berlin*, 154 Conn. 695, 229 A.2d 29 (1967), in support of his argument that the court's approach to determining damages was improper. In *Gontarz*, similar to this matter, the trial court adopted an appraisal in which damages were calculated "by measuring the amount of land taken and then multiplying the amount of land taken by an applied square-foot value." Id., 696. Added to that figure was an amount representing the value of trees that were located on the land taken. Id., 696–97. Our Supreme Court reversed the award of damages, concluding that that methodology was improper and that the before and after rule should have been applied. Id., 697. *Gontarz*, however, is distinguishable from the present matter because there is no indication that the trial court in *Gontarz* either included a separate award of severance damages for losses to the remainder of the parcel affected or found explicitly that no such damages were proven.

We conclude that the court appropriately assessed damages as equitably as the circumstances permitted and in a manner not inconsistent with the purposes of the before and after rule. Accordingly, the damages award is not clearly erroneous and must stand.

The judgment is affirmed.

In this opinion the other judges concurred.