******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

COMMISSIONER OF TRANSPORTATION *v.*
TERESA B. LAGOSZ ET AL.
(AC 40885)

Lavine, Moll and Bear, Js.

*Syllabus*

The defendant T appealed to the trial court, pursuant to statute (§ 13a-76), from the assessment of damages by the plaintiff, the Commissioner of Transportation, in connection with the taking, by condemnation, of certain of T's real property, on which her husband, J, operated a business. The plaintiff had deposited with the court $420,000 as compensation for the taking of T's real property, but T claimed that the amount of compensation was inadequate. Thereafter, the parties met to mediate a settlement of the amount of the compensation to be paid to T for the taking. The plaintiff claimed that, during the third mediation session, the parties entered into an oral agreement in which T would receive a total of $600,000, less the $420,000 already paid by the plaintiff, as compensation for the taking of her real property. The plaintiff further claimed that the court spoke to T and J to ensure that they understood and accepted the terms of that agreement, and that the court then informed the plaintiff that T had agreed to those terms. Thereafter, T refused to sign the final version of the written settlement agreement, discharged her counsel, and elected to represent herself at the trial. The court held a hearing pursuant to *Audubon Parking Associates Ltd. Partnership* v. *Barclay & Stubbs, Inc.* (225 Conn. 804), to determine if the parties had reached an enforceable settlement agreement. Subsequently, the trial court rendered judgment finding that a settlement agreement was reached in the amount of $600,000, from which T appealed to this court. *Held*:

1. T could not prevail on her claim that the trial court, following the *Audubon* hearing, improperly enforced a purported settlement agreement because the agreement was not inclusive of the essential terms of the parties' agreement, namely, the relocation expenses for J's business; the issue of reimbursement expenses was not an essential term of the settlement agreement, as the only essential term of the agreement within the context of T's appeal from the plaintiff's assessment of damages pursuant to § 13a-76 was the amount of compensation to be paid to T for the taking of her real property, T did not dispute that the parties agreed to a sum of $600,000 as compensation for the taking of her real property, and compensation for business relocation expenses did not fall under the purview of § 13a-76.

2. T could not prevail on her claim that the testimony elicited during the *Audubon* hearing, including the testimony regarding relocation expenses for J's business, was unclear and ambiguous as to what the terms of the settlement agreement were and, as a result, the trial court's finding that an enforceable agreement was entered into was clearly erroneous: the testimony of T's former attorneys, the plaintiff's representatives, and J confirmed that the parties had agreed to a sum of $600,000 in compensation for the taking of T's real property, and although there was extensive testimony and discussion at the *Audubon* hearing regarding the relocation expenses of the business, those expenses were outside the scope of the § 13a-76 proceeding, which properly concerned only the issue of whether there was an agreed upon sum of $600,000 as compensation for the real property; accordingly, the trial court's findings of fact as to the terms of the settlement agreement were not clearly erroneous, and the court properly concluded that there was a legally enforceable settlement agreement between the parties in the amount of $600,000 as just compensation for the taking of T's real property.

Argued February 7—officially released May 14, 2019

*Procedural History*

Appeal from the plaintiff's assessment of damages filed in connection with the taking by condemnation of

certain of the named defendant's real property, brought to the Superior Court in the judicial district of New Britain, where the court, *Abrams, J.*, rendered judgment in accordance with the parties' settlement agreement; thereafter, the court denied the named defendant's motion to reargue, and the named defendant appealed to this court. *Affirmed.*

*Teresa B. Lagosz*, self-represented, the appellant (named defendant).

*Raul A. Rodriguez*, assistant attorney general, with whom, on the brief, was *George Jepsen*, former attorney general, for the appellee (plaintiff).

*Opinion*

BEAR, J. The defendant Teresa B. Lagosz[1] appeals from the judgment of the trial court reassessing damages in the sum of $600,000 for the taking of her property by the plaintiff, the Commissioner of Transportation, on May 4, 2015, in connection with the improvement of the New Haven-Hartford-Springfield rail corridor. The defendant's primary claim on appeal is that the court improperly found and summarily enforced, after conducting a hearing pursuant to *Audubon Parking Associates Ltd. Partnership* v. *Barclay & Stubbs, Inc.*, 225 Conn. 804, 626 A.2d 729 (1993) (*Audubon*), an oral settlement agreement in the amount of $600,000 as just compensation for the taking by eminent domain of the defendant's real property. Specifically, the defendant claims that (1) the settlement agreement was not inclusive of all the essential terms of the parties' agreement and (2) the court's finding that an enforceable agreement existed was clearly erroneous because it was based on unclear and ambiguous testimony elicited at the *Audubon* hearing.[2] Conversely, the plaintiff claims that the court, after the *Audubon* hearing, correctly concluded that there was a settlement agreement in the amount of $600,000 that was just compensation for the taking of the defendant's real property. We agree with the plaintiff and, accordingly, affirm the judgment of the trial court.

The following facts and procedural history are undisputed or uncontested. On May 4, 2015, pursuant to General Statutes § 13b-36[3] and General Statutes (Rev. to 2015) § 13a-73,[4] the plaintiff took by eminent domain real property owned by the defendant located at 468 Norton Lane in Berlin. The real property consisted of approximately 11.64 acres, including all buildings, improvements and appurtenances thereon. The defendant's husband, Joseph Lagosz, also operated a business in one of the buildings on the real property. On the date of the taking, the plaintiff deposited with the court $420,000 in compensation for the taking.

On September 28, 2015, the defendant appealed to the court from the plaintiff's assessment of damages. See General Statutes § 13a-76.[5] In that appeal, she stated that she was "aggrieved by [the $420,000] assessment of damages because the same is inadequate." No other claims were set forth in her appeal.

On November 3, 2015, the plaintiff filed his answer denying that the assessment was inadequate. On November 6, 2015, a certificate of closed pleadings and a claim to the trial list were filed. The defendant subsequently was ordered to provide an appraisal of the real property to the plaintiff on or before April 1, 2016. The parties met on three occasions in June, 2016, in an attempt to mediate a settlement on the amount of the compensation to be paid to the defendant for the taking.

The plaintiff asserts that, during the third of those mediation sessions, the parties entered into an oral agreement in which the defendant would receive a total of $600,000, less the $420,000 already paid by the plaintiff, as compensation for the taking of her real property and, in turn, the defendant and her husband would vacate the property by August 15, 2016, without having to pay any postcondemnation use and occupancy charges.[6] The plaintiff further states that the court, during the third mediation session, spoke to the defendant and her husband to ensure that they understood and accepted the terms of that agreement. The court then informed the plaintiff that the defendant had agreed to those terms. After the reported settlement, the plaintiff and the defendant's counsel prepared drafts of a written settlement agreement memorializing the agreement reached through the mediation, but the defendant refused to sign the final version of the agreement, and the case was scheduled for trial.[7] The defendant subsequently discharged her counsel and elected to represent herself at the trial. Her former counsel filed a motion to withdraw and requested a status conference.

On July 21, 2017, the court, after the status conference, ordered, sua sponte, that an *Audubon* hearing take place to determine if the parties had reached an enforceable settlement agreement, and the court postponed any trial until after it made its determination. On August 14, 2017, the court commenced the *Audubon* hearing. The defendant, her husband, and the defendant's former attorneys were present at the hearing. During the hearing, the following colloquy between the court and Richard P. Healey, one of the defendant's former attorneys, occurred:

"The Court: Is it your position that there was no settlement agreement?

"[Attorney Healey]: No.

"The Court: Okay.

"[Attorney Healey]: No, not at all."

Attorney Healey's cocounsel, John Bradley, and the court had the following colloquy:

"[Attorney Bradley]: I definitely agree, Your Honor . . . that the settlement was for—they were going to pay an additional $180,000 over what they—

"The Court: In addition to the [$420,000] that was already on deposit.

"[Attorney Bradley]: Right. . . . So the essential terms, in my view, was the additional [$180,000], waiver of the use and occupancy [which occurred]."

Attorney Healey told the court that the only obligation of the defendant and her husband under the settlement agreement "was to vacate the [real] property at a date that was acceptable to the state; they have done that."

The court also stated the following:

"The Court: My memories have come flying back and comport with everyone's here; is that we did reach an agreement as to the money. The other stuff was a little— a little more amorphous, but the other stuff is off the table now.

"[Attorney Healey]: Right.

"The Court: I mean, that has been completed. The agreement was $600,000 . . . . I don't think I can reopen negotiations. The only thing I'm allowed to determine is whether there was a deal. And I'm being told there was a deal. I remember there was a deal."

The defendant's husband testified in the defendant's presence and on her behalf at the *Audubon* hearing. In response to a question by the court, he stated that the $600,000 in total payment for the real property was agreed to by the parties.

On August 14, 2017, after the *Audubon* hearing concluded, the court rendered judgment finding that a settlement agreement was reached in the amount of $600,000: "The court finds that a settlement was reached in this matter in the amount of $600,000. Any settlement funds as yet unpaid to the defendant are hereby ordered to be paid." On September 5, 2017, the defendant filed a motion to reargue, which was denied by the court on September 7, 2017. On September 27, 2017, the defendant filed the present appeal. Additional facts will be set forth as necessary.

Before we address the defendant's claims, we first set forth the applicable standard of review and relevant legal principles. "Because the [defendant challenges] the trial court's legal conclusion that the agreement was summarily enforceable, we must determine whether that conclusion is legally and logically correct and whether [it finds] support in the facts set out in the [record]." (Internal quotation marks omitted.) *Kidder* v. *Read*, 150 Conn. App. 720, 733, 93 A.3d 599 (2014). Our standard of review of legal questions is plenary. See *State* v. *Hanisko*, 187 Conn. App. 237, 245, 202 A.3d 375 (2019).

In *Audubon*, our Supreme Court determined that a settlement agreement resolving the issues in a pending case may be enforced prior to and without the necessity of a trial: "A trial court has the inherent power to enforce summarily a settlement agreement as a matter of law when the terms of the agreement are clear and unambiguous. . . . Agreements that end lawsuits are contracts, sometimes enforceable in a subsequent suit, but in many situations enforceable by entry of a judgment in the original suit. A court's authority to enforce a settlement by entry of judgment in the underlying action is especially clear where the settlement is reported to the court during the course of a trial or other significant

courtroom proceedings.[8] . . .

"In *Janus Films, Inc.* v. *Miller*, [801 F.2d 578, 583 (2d Cir. 1986)], Judge Newman, writing for the majority of the Second Circuit Court of Appeals, noted the important policy behind a court's power to enforce summarily a settlement agreement: Due regard for the proper use of judicial resources requires that a trial judge proceed with entry of a settlement judgment after affording the parties an opportunity to be heard as to the precise content and wording of the judgment, rather than resume the trial and precipitate an additional lawsuit for breach of a settlement agreement. This authority should normally be exercised whenever settlements are announced in the midst of a trial.

"Summary enforcement is not only essential to the efficient use of judicial resources, but also preserves the integrity of settlement as a meaningful way to resolve legal disputes. When parties agree to settle a case, they are effectively contracting for the right to avoid a trial. The asserted right not to go to trial can appropriately be based on a contract between the parties. . . . The essence of that right [cannot] be vindicated effectively after the trial has occurred. . . . To hold that a jury trial is a necessary predicate to enforcement of a settlement agreement would undermine the very purpose of the agreement." (Citations omitted; emphasis omitted; footnote added; internal quotation marks omitted.) *Audubon*, supra, 225 Conn. 811–12.

I

We first address the defendant's claim that the court, following the *Audubon* hearing, improperly enforced a purported settlement agreement because the agreement was not inclusive of the essential terms of the parties' agreement.[9] Specifically, the defendant argues that the settlement agreement did not include relocation expenses for her husband's business, which the defendant implicitly asserts is an essential term of the agreement.[10] We disagree.

In the present matter, the defendant stated at oral argument before this court that the only agreement reached between the parties was that the defendant would pay $600,000 as compensation for the taking of the home and the real property. Although the defendant primarily claims that the settlement agreement does not include reimbursement for expenses incurred to relocate her husband's business,[11] the business expense claims were beyond the scope of the eminent domain proceeding, and they were not barred from resolution in any appropriate forum even if the question of just compensation was resolved.[12] Pursuant to § 13a-76, the just compensation proceedings were limited to the reassessment of damages. "It is well established by our case law that the scope of a § 13a-76 proceeding is limited to a reassessment of the damages offered by the [C]om-

missioner [of Transportation] for a taking." *Commissioner of Transportation* v. *Larobina*, 92 Conn. App. 15, 29, 882 A.2d 1265, cert. denied, 276 Conn. 931, 889 A.2d 816 (2005). "It is fundamental that the state government or any properly designated agency thereof may take private property under its power of eminent domain, if the taking is for a public use and if just compensation is paid therefor. . . . The single objective of an eminent domain proceeding is to ensure that the property owner shall receive, and that the state shall only be required to pay, the just compensation which the fundamental law promises the owner for the property which the state has seen fit to take for public use." (Citations omitted; internal quotation marks omitted.) *Russo* v. *East Hartford*, 4 Conn. App. 271, 273–74, 493 A.2d 914 (1985). Moreover, this court has repeatedly "recognize[d] the limited scope of an appeal from a statement of compensation in an eminent domain proceeding . . . ." (Citation omitted.) Id., 274 n.2; see also *Albahary* v. *Bristol*, 276 Conn. 426, 435 n.6, 886 A.2d 802 (2005).

In the present case, the only essential term of the settlement agreement within the context of the defendant's appeal from the plaintiff's assessment of damages pursuant to § 13a-76 was the amount of compensation to be paid to the defendant for the taking of her real property. The defendant does not dispute that the parties agreed to a sum of $600,000 as compensation for the taking of her real property. Rather, the defendant takes issue with the compensation for business relocation expenses, which fall under the purview of General Statutes §§ 8-268 and 8-278, not § 13a-76. See footnote 12 of this opinion. Because the issue of reimbursement expenses is outside the scope of compensation for the taking of the real property, it is not an essential term of the agreement. Accordingly, we reject the defendant's claim.

II

The defendant next claims that the testimony elicited during the *Audubon* hearing was unclear and ambiguous as to what the terms of the agreement were and, as a result, the court's finding that an enforceable agreement was entered into was clearly erroneous. Specifically, the defendant appears to argue that the testimony regarding relocation expenses for the business was unclear and ambiguous and, therefore, the agreement was not enforceable. We disagree.

We begin our analysis with the applicable standard of review. "[T]o the extent that the defendant['s] claim implicates the court's factual findings, our review is limited to deciding whether such findings were clearly erroneous. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with

the definite and firm conviction that a mistake has been committed. . . . In making this determination, every reasonable presumption must be given in favor of the trial court's ruling." (Internal quotation marks omitted.) *Kidder* v. *Read*, supra, 150 Conn. App. 733.

The testimony of the defendant's former attorneys, the plaintiff's representatives, and the defendant's husband confirmed that the parties had agreed to a sum of $600,000 in compensation for the taking of the defendant's real property. Although there was extensive testimony and discussion at the *Audubon* hearing regarding the relocation expenses of the business, those expenses were outside the scope of the § 13a-76 proceeding, which properly concerned only the issue of whether there was an agreed upon sum of $600,000 as compensation for the *real property*. See *Commissioner of Transportation* v. *Larobina*, supra, 92 Conn. App. 29.

On the basis of our review of the representations and admissions by the defendant's former attorneys and her husband and the statements of the plaintiff's representatives at the *Audubon* hearing concerning the $600,000 agreed to as just compensation, the court's findings of fact as to the terms of that agreement were not clearly erroneous. The court, applying those facts, properly concluded that there was a legally enforceable settlement agreement between the parties in the amount of $600,000 as just compensation for the taking of the defendant's real property.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The other named defendants, Bank of America, Webster Bank, MERS, the Berlin Revenue Collector, and Richard P. Healey of Rome McGuigan, P.C., did not participate in this appeal. For clarity, we refer to Teresa Lagosz as the defendant.

[2] The defendant also raises three additional claims in her principal appellate brief.

First, without citing to any relevant legal authority, the defendant argues that the trial court improperly ordered, sua sponte, an *Audubon* hearing in lieu of commencing a trial that was scheduled, "without evidence that the parties' terms for a stipulation [agreement] had been settled on." Because the defendant does not provide any relevant case law or legal analysis to support her assertion, we consider this claim to be inadequately briefed and, therefore, we decline to address her claim. "Claims are inadequately briefed when they are merely mentioned and not briefed beyond a bare assertion. . . . Claims are also inadequately briefed when they . . . consist of conclusory assertions . . . with no mention of relevant authority and minimal or no citations from the record . . . ." (Internal quotation marks omitted.) *Estate of Rock* v. *University of Connecticut*, 323 Conn. 26, 33, 144 A.3d 420 (2016).

Second, the defendant claims that she was deprived of her right to due process as a result of the *Audubon* hearing and the subsequent judgment of the court because she was entitled to a trial to determine just compensation for the taking of her property. Our law, however, is that no trial is necessary under the circumstances of this case: "To hold that a jury trial is a necessary predicate to enforcement of a settlement agreement would undermine the very purpose of the agreement." *Audubon*, supra, 225 Conn. 812. "When parties agree to settle a case, they are effectively contracting for the right to avoid a trial." (Emphasis omitted.) Id.

In *Bragg* v. *Weaver*, 251 U.S. 57, 59, 40 S. Ct. 62, 64 L. Ed. 135 (1919), the United States Supreme Court noted that "it is essential to due process that the mode of determining the compensation be such as to afford the owner

an opportunity to be heard." In the present case, the defendant had an opportunity to be heard in the *Audubon* hearing and to offer evidence to the court in support of her positions, which occurred. "It is fundamental that property cannot be taken without procedural due process as guaranteed by the fourteenth amendment to the constitution of the United States and article first, § 10, of the constitution of Connecticut. . . . Due process requires notice and an opportunity to be heard at a meaningful time and in a meaningful manner . . . but does not mandate any specific form of procedure; rather, it protects substantive rights." (Citations omitted; emphasis omitted; internal quotation marks omitted.) *Fermont Division* v. *Smith*, 178 Conn. 393, 397, 423 A.2d 80 (1979).

Third, the defendant also appears to claim that she was deprived of her right to due process because of a supposed lack of notice of the taking. To the extent that the defendant claims a defect in the taking itself, we note that "[i]f a condemnee wants to challenge the validity of the condemnation, he or she must bring a separate action for injunctive relief." *Commissioner of Transportation* v. *Larobina*, 92 Conn. App. 15, 29, 882 A.2d 1265, cert. denied, 276 Conn. 931, 889 A.2d 816 (2005). As a result, we conclude that the defendant's claim that she was deprived of due process is without merit.

[3] General Statutes § 13b-36 (a) provides: "The commissioner may purchase or take and, in the name of the state, may acquire title in fee simple to, or any lesser estate, interest or right in, any land, buildings, equipment or facilities which the commissioner finds necessary for the operation or improvement of transportation services. The determination by the commissioner that such purchase or taking is necessary shall be conclusive. Such taking shall be in the manner prescribed in subsection (b) of section 13a-73 for the taking of land for state highways." Although subsection (c) of § 13b-36 was amended in 2018, that amendment has no bearing on this appeal. For purposes of clarity, we refer to the current revision of the statute.

[4] Subsections (a) and (b) of General Statutes (Rev. to 2015) § 13a-73 govern the taking of land for state highways and provide in relevant part: "(a) 'Real property,' as used in this section, includes land and buildings and any estate, interest or right in land.

"(b) The commissioner may take any land he finds necessary for the layout, alteration, extension, widening, change of grade or other improvement . . . and the owner of such land shall be paid by the state for all damages, and the state shall receive from such owner the amount or value of all benefits, resulting from such taking, layout, alteration, extension, widening, change of grade or other improvement. The use of any site acquired . . . by condemnation shall conform to any zoning ordinance or development plan in effect for the area in which such site is located, provided the commissioner may be granted any variance or special exception as may be made pursuant to the zoning ordinances and regulations of the town in which any such site is to be acquired. The assessment of such damages and of such benefits shall be made by the commissioner and filed by him with the clerk of the superior court for the judicial district in which the land affected is located. The commissioner shall give notice of such assessment to each person having an interest of record therein by mailing to each a copy of the same, postage prepaid, and, at any time after such assessment has been made by the commissioner, the physical construction of such layout, alteration, extension, widening, maintenance storage area or garage, change of grade or other improvement may be made. If notice cannot be given to any person entitled thereto because his whereabouts or existence is unknown, notice may be given by publishing a notice at least twice in a newspaper published in the judicial district and having a daily or weekly circulation in the town in which the property affected is located. Any such published notice shall state that it is a notice to the last owner of record or his surviving spouse, heirs, administrators, assigns, representatives or creditors if he is deceased, and shall contain a brief description of the property taken. Notice shall also be given by mailing to each such person at his last-known address, by registered or certified mail, a copy of such notice. If, after a search of the land and probate records, the address of any interested party cannot be found, an affidavit stating such facts and reciting the steps taken to establish the address of any such person shall be filed with the clerk of the court and accepted in lieu of service of such notice by mailing the same to the last known address of such person. Upon filing an assessment with the clerk of the court, the commissioner shall forthwith sign and file for record with the town clerk of the town in which such real property is located a certificate setting forth the fact of such taking, a description of the real property so taken and the names and residences of the owners from whom

it was taken. Upon the filing of such certificate, title to such real property in fee simple shall vest in the state of Connecticut, except that, if it is so specified in such certificate, a lesser estate, interest or right shall vest in the state. The commissioner shall permit the last owner of record of such real property upon which a residence is situated to remain in such residence, rent free, for a period of one hundred twenty days after the filing of such certificate."

[5] General Statutes § 13a-76 provides in relevant part: "Any person claiming to be aggrieved by the assessment of such special damages or such special benefits by the commissioner may . . . apply to the superior court . . . for a reassessment of such damages or such benefits so far as the same affect such applicant. . . ."

[6] The defendant and her husband vacated the property on September 16, 2016, without having to pay any postcondemnation use and occupancy charges.

[7] We note that "the fact that the settlement agreement was not reduced to writing or signed by the parties does not preclude it from binding the parties." *Nanni* v. *Dino Corp.*, 117 Conn. App. 61, 67, 978 A.2d 531 (2009).

[8] The rule also includes agreements reached outside of formal court proceedings, but during pending litigation before the court. See *Ackerman* v. *Sobol Family Partnership, LLP*, 298 Conn. 495, 499–501, 4 A.3d 288 (2010) (settlement agreement reached after mediation session through out-of-court letters and phone calls); see also *Matos* v. *Ortiz*, 166 Conn. App. 775, 806–807, 144 A.3d 425 (2016) ("In the majority of cases where settlement agreements have been summarily enforced pursuant to *Audubon*, the agreement at issue was either read directly into the record or otherwise reported to the court. In the cases where a settlement agreement was not directly presented to the court in full, it nevertheless was in some sense placed before the court during pending litigation." [Footnote omitted.]); *Tirreno* v. *The Hartford*, 161 Conn. App. 678, 681, 129 A.3d 735 (2015) (terms of oral settlement agreement memorialized outside of court in series of e-mails between parties and testified to by counsel).

[9] We acknowledge that "[n]umerous Connecticut cases require definite agreement on the essential terms of an enforceable agreement." (Internal quotation marks omitted.) *Santos* v. *Massad-Zion Motor Sales Co.*, 160 Conn. App. 12, 19, 123 A.3d 883, cert. denied, 319 Conn. 959, 125 A.3d 1013 (2015).

[10] The defendant also claims that the settlement agreement did not address the issue of whether she and her husband could return to the property to retrieve plants that remained there. At the *Audubon* hearing, Attorney Healey testified that, although the parties had discussed the possibility of allowing the defendant to retrieve certain plants with the permission of the Department of Transportation after the defendant vacated the premises, it was outside the scope of the agreement. The defendant's husband testified that he and the defendant went to retrieve the plants in April, 2017, but that they were no longer there.

[11] At the *Audubon* hearing, Steven Degen, who worked for the Department of Transportation, testified that the defendant was entitled to reimbursement for the relocation of the business once a new location for the business was selected. Moreover, Bradley, one of the defendant's former attorneys, testified that relocation benefits were still available to the defendant and her husband if they sought them and that those benefits were outside the scope of the stipulation for judgment. All written drafts of the stipulation for judgment contained provisions that stated that the defendant was entitled to pursue moving and relocation expenses for her husband's business.

[12] "Under the state relocation act, businesses are eligible to receive compensation for relocation expenses and losses when they are forced to remove personal property as a result of the state's acquisition of real property. General Statutes § 8-268. If a business seeks to contest the amount of compensation offered by the state, the state relocation act requires an appeal to the acquiring agency; General Statutes § 8-278; followed by an administrative appeal to the Superior Court pursuant to the [Uniform Administrative Procedure Act]." *Commissioner of Transportation* v. *Rocky Mountain, LLC*, 277 Conn. 696, 709–10, 894 A.2d 259 (2006).

Additionally, § 8-273-1 (a) of the Regulations of Connecticut State Agencies provides: "Any person aggrieved as to the provisions of Chapter 135 of the [General Statutes], as revised, should first request reconsideration by the State agency of the decision initially received as to relocation assistance. If the person aggrieved is not satisfied by the decision rendered by the State agency upon reconsideration, he then may request a hearing before the Relocation Advisory Assistance Appeals Board."