## JANE DOE *v.* PRIORITY CARE, INC.

Superior Court, Judicial District of New Haven
File No. CV-06-4017186S

Memorandum filed May 9, 2007

*Christopher DeMarco*, for the plaintiff.

*Esty & Buckmir, LLC*, for the apportionment defendant Clifford Beers Clinic.

*Danaher, Lagnese & Neal, P.C.*, for the apportionment defendant Guita Epstein et al.

CORRADINO, J. This action lies in medical malpractice. As such it must comply with the requirements of General Statutes § 52-190a, which was amended in 2005. The statute as amended requires that the attorney or party filing a medical malpractice action must make a reasonable inquiry giving rise to a good faith belief that grounds exist for an action in professional medical negligence. A certificate must be attached to the complaint evidencing this inquiry. The 2005 amendment added the following language in subsection (a): "To show the existence of such good faith, the claimant or the claimant's attorney . . . shall obtain a written and signed opinion of a similar health care provider . . . that there appears to be evidence of medical negligence and includes a detailed basis for the formation of such opinion. . . ." Public Acts 2005, No. 05-275, § 2 (P.A. 05-275).

Subsection (c) then states in the 2005 act: "(c) The failure to obtain and file the written opinion required by subsection (a) of this section shall be grounds for the dismissal of the action." Id.

I

In this case, motions to dismiss have been filed on the grounds that the written opinion is not sufficiently detailed to support the "formation" of a good faith opinion that there is a basis to believe there are grounds

for the action. Because of this, it is argued that the court has no subject matter jurisdiction to entertain this action. There are not any appellate opinions interpreting the ambit of the 2005 amendments to § 52-190a, but there are several helpful trial court decisions. Judge Matasavage wrote a thorough decision in *Andrikis* v. *Phoenix Internal Medicine*, Superior Court, judicial district of Waterbury, Docket No. CV-05-500482S (April 19, 2006) (41 Conn. L. Rptr. 222); see also *Oram* v. *DeCholnoky*, Superior Court, judicial district of Stamford-Norwalk, Docket No. CV-05-4005513 S (March 10, 2006) (*Shay, J.*) (41 Conn. L. Rptr. 46); *Mastrone* v. *St. Vincent's Medical Center*, Superior Court, judicial district of Fairfield, Docket No. CV-05-5000407 (May 23, 2006) (*Rodriguez, J.*) (41 Conn. L. Rptr. 375); and the discussion by Judge Pittman regarding the appropriate interpretation of the amended statute in *Ranney* v. *New Britain General Hospital*, Superior Court, judicial district of New Britain, Docket No. CV-06-5000954 (September 18, 2006).

It does not appear to be useful to frame the issue before the court in terms of whether a court is deprived of subject matter jurisdiction either because the written opinion referred to in subsection (a) of the amended statute is not attached to the complaint or because the opinion did not have sufficient detail. In the latter situation, particularly, such a position does not appear to be required by the statutory language, and it would lead to rather odd and confusing results.

Subsection (c) does not state that failure to attach the opinion to the complaint shall result in dismissal or that the matter shall be dismissed if the opinion referred to in subsection (a) and defined therein as "detailed" is not provided. The language simply states that failure to attach the opinion referred to in "subsection (a) of this section shall be grounds for the dismissal of the action." P.A. 05-275, § 2. Judge Rittenband in

*Green* v. *Norbert,* judicial district of Hartford, Docket No. CV-06-5004859S (February 7, 2007) (42 Conn. L. Rptr. 806), turned to a law dictionary and to Webster's definitions of the word "grounds," and concluded that the statutory language does not deprive a court of discretion as to whether a motion to dismiss should be granted even where a good faith certificate had been filed without any written opinion. He permitted "the plaintiffs to amend their complaint to attach the required opinion." Id. Judge Rittenband noted that the definitions of "grounds" spoke only in terms of meaning a reason or basis to take a certain action, not that the action, here dismissal, must be taken.

If a trial court is not mandated to dismiss the action, then the only other possibility in the universe of possible actions is that the judge has discretion as to whether the action should be dismissed for failure to supply an opinion of sufficient detail, but that does not implicate subject matter jurisdiction. Either a court has jurisdiction or it does not; if it does not because of an interpretation given the language of subsections (a) and (c) of § 52-190a, would a proponent of subject matter jurisdiction dismissal argue that a trial court sua sponte could dismiss a malpractice case if in his or her opinion the written opinion does not contain sufficient detail? See *Commissioner of Transportation* v. *Larobina,* 92 Conn. App. 15, 28–29, 882 A.2d 1265, cert. denied, 276 Conn. 931, 889 A.2d 816 (2005). Would there be some type of time limit on when the absence of subject matter jurisdiction lightning could strike? Could it be exercised sua sponte even after discovery had progressed sufficiently to provide that requirement of detail that anyone could accept as adequate?

In *Ranney,* the court stated: "Nor does the statute presuppose that the opinion expressed in the writing appended to the complaint would obviate the need for further pleading and discovery by both sides in such a

lawsuit. Were there to be either of those requirements, plaintiffs would likely face insurmountable barriers to commencing and maintaining medical malpractice actions." *Ranney* v. *New Britain General Hospital*, supra, Superior Court, Docket No. CV-06-5000954. In many, if not all, cases, that could be true, but that presents only half the problem if trial judges were required to treat motions to dismiss in the § 52-190a context as raising subject matter jurisdiction. In some of these complex malpractice cases, to what talisman do trial judges turn to decide whether in a particular case sufficient detail has been provided to show a basis for the malpractice action? Do we hold evidentiary hearings to decide the question? Do we just hear oral argument? All of this does not have the ring of defining an issue that should be decided on the basis of subject matter jurisdiction. The legislature must be presumed to have intended sensible results from the application of its legislation. *Stamford Ridgeway Associates* v. *Board of Representatives*, 214 Conn. 407, 427, 572 A.2d 951 (1990).

Given, then, the nature of the statutory language in subsection (c) of § 52-190a and the difficulties presented by applying a subject matter jurisdictional analysis, this court feels it should apply the rule set forth in *Fedus* v. *Planning & Zoning Commission*, 278 Conn. 751, 900 A.2d 1 (2006). There, the court stated after reviewing several cases: "These cases, moreover, are consistent with the well established principle that, in determining whether a court has subject matter jurisdiction, every presumption favoring jurisdiction should be indulged. . . . We therefore require a clear showing of legislative intent that a failure to comply with a particular statutory requirement deprives the court of subject matter jurisdiction." (Citation omitted; internal quotation marks omitted.) Id., 778–79.

Why should this rule be operative here—it is not some invention of the courts to limit the authority of the legislature but is based on recognition of the fact that the ability to sue for professional negligence is a common-law right given to citizens to redress their grievances in the only practical forum available—i.e., the courts. Before that right is circumscribed, it must be absolutely clear that the legislature intended to curtail its exercise.

In this regard, *Fedus* had further language that underlines the importance our court attaches to the people's right to access the courts. At page 779, the court went on to state: "Indeed, although mandatory language may be an indication that the legislature intended . . . [for the] requirement to be jurisdictional, such language alone does not overcome the strong presumption of jurisdiction, nor does such language alone prove strong legislative intent to create a jurisdictional bar." (Internal quotation marks omitted.) Id., 779.

For the foregoing reasons, the court does not believe it is helpful to approach the problem of what is to be done when no subsection (c) written opinion is filed or the opinion attached to the complaint is said to be not detailed enough from the perspective of a subject matter jurisdiction analysis.[1]

---

[1] Also, several courts reviewing the 2005 amendments to § 52-190a have concluded that the legislative history does not indicate an intent to treat the failure to comply with its requirements as implicating subject matter jurisdiction, especially as regards a claim of an insufficient opinion. See *Doherty* v. *Danbury Hospital*, Superior Court, judicial district of Danbury, Docket No. CV-06-5001040S (February 22, 2007) (*Thim, J.*); *Green* v. *Norbert*, supra, 42 Conn. L. Rptr. 806; *Lawlor* v. *Hagstrom*, Superior Court, judicial district of Hartford, Docket No. CV-06-5002094 (December 29, 2006) (*Wiese, J.*); *Donovan* v. *Sowell*, Superior Court, judicial district of Waterbury, Docket No. CV-06-500596 S (June 21, 2006) (*Matasavage, J.*) (41 Conn. L. Rptr. 609); *Andrikus* v. *Phoenix Internal Medicine*, supra, 41 Conn. L. Rptr. 222; cf. *Ouellette* v. *Brook Hollow Health Care Center*, Superior Court, judicial district of New Haven, Docket No. CV-06-5002865S (February 16, 2007) (42 Conn. L. Rptr. 863); *Jervis* v. *Steckler*, Superior Court, judicial district of Litchfield, Docket No. CV-06-5000679 (October 19, 2006) (*Pickard, J.*) (42 Conn. L. Rptr. 163).

But all of this cannot mean that the courts should attach no importance to the use of the word "dismissal" in subsection (c) of § 52-190a. The legislative hearings make clear that the legislature wanted to change the regime set up by *LeConche* v. *Elligers*, 215 Conn. 701, 579 A.2d 1 (1990). After that case, motions to strike were filed when a good faith certificate was not attached to the complaint. But if such a motion was granted, the plaintiff could plead over with a new complaint to which was attached a good faith certificate.

Judge Matasavage in *Andrikis* and Judge Holden in *Ouellette* v. *Brook Hollow Health Care Center*, Superior Court, judicial district of New Haven, Docket No. CV-06-5002865S (February 16, 2007) (42 Conn. L. Rptr. 863), reviewed the legislative history, and it is clear that the legislature was not satisfied with § 52a-190a and its application, and that is what led to the 2005 amendment that is now before the court. Senator John A. Kissel is quoted as stating that the defense would be helped "right at the inception of the medical malpractice case . . . [because it would allow] . . . counsel and their clients [to] really narrow down exactly what was the basis . . . for the plaintiff's claim . . . ." *Andrikis* v. *Phoenix Internal Medicine*, supra, 41 Conn. L. Rptr. 225. Senator Kissel, according to Judge Matasavage, defined part of the purpose of the act, and the court quoted Senator Kissel as stating that the amendment sought to "[reform] the process . . . speed it up . . . [and] expedite it." Id. Representative Michael P. Lawlor stated that the amendment "makes it much more difficult to bring a medical malpractice action in court . . . ." Id. Judge Holden quotes Senator Kissel as stating that the amendment "was meant to allow 'the defense counsel [to] review the nuts and bolts of what's in there.' " *Ouellette* v. *Brook Hollow Health Care Center*, supra, 42 Conn. L. Rptr. 866 n.3.

In this court's opinion, at least what the legislature can be interpreted as doing in amending § 52-190a in 2005 and using "grounds for dismissal" language, is the setting up of a procedural rule requiring plaintiffs to provide mandatory information or discovery at the inception of litigation without the need for the defendant to move for such information—it cannot because litigation has not commenced.

Because of this discovery aspect, in enforcing the legislature's purposes in amending the statute, it is helpful to turn to Practice Book § 13-14 procedure. Under that section, for example, where there is a failure to comply with discovery after litigation has commenced, nonsuit can be a sanction imposed if the circumstances warrant such action. A Practice Book § 13-14 nonsuit dismisses an action, and the mere use of the word "dismissal" in § 52-190a does not mean the specter of subject matter jurisdiction must be raised to accomplish a similar end under the statute.

II

The question then becomes, how is the discretionary dismissal mechanism in § 52-190a to be used in such a way so as to accomplish the legislature's purposes? The goal sought to be achieved by requiring a detailed written opinion, at least in this court's opinion, falls into two categories: (1) to allow the defendant at the inception of litigation to be fairly apprised of the exact nature of his or her purported professional negligence; and (2) to force the prospective plaintiff to make a reasoned decision as to whether an action should be brought at all while at the same time providing a reviewing trial court the means to determine whether, given the required written opinion, the certificate can be said to have been filed in good faith.

The foregoing would mean that where no detailed written opinion was filed at all, it might be the rare

case that would escape dismissal. But query, should dismissal be granted where the lawyer had secured a sufficient detailed opinion but inadvertently did not attach it to the certificate? What if no opinion was attached, but before the hearing date for the motion to dismiss the plaintiff's counsel, realizing the error of his or her ways, had sent voluminous discovery to the defendant along with a written opinion detailing the basis of the malpractice claim?

As to a claim that the written opinion actually filed was not detailed enough to inform the defendant of the nature of the action, a dismissal would certainly seem in order where the opinion sets forth facts and makes conclusions that are patently absurd, which on their face have nothing to do with the claimed injury or its causation or, as stated in *Ranney*, the opinion is "disjointed," "illogical or incomprehensible . . . ." *Ranney* v. *New Britain General Hospital*, supra, Superior Court, Docket No. CV 06-5000954.

The more difficult situation would be one where the opinion does not suffer from the above faults or point to a lack of good faith, as that term is commonly understood, but is just not sufficiently detailed, cursory or contains conclusions for which no basis is given. If these dismissals are discretionary, then that discretion should be exercised in a fair and rational way. In cases presenting the just discussed problem, why cannot Practice Book § 13-14 practice be referred to, a practice followed every Monday on nonarguable calendars throughout our state. The judge could tell the plaintiff that, for example, the present written opinion is inadequate, an appropriate opinion must be filed within ten days, the matter is continued on the short calendar docket for two weeks and, if the opinion is not so filed, the case will be dismissed. There may be other circumstances that would suggest such an order is inappropriate, but absent these, nothing in the language

of § 52-190a (c) suggests such an order could not be considered. The legislature's purpose would be accomplished by such an order because, unlike the practice resulting from *LeConche*, a dismissal could enter, pleading over would not be allowed and the court could keep a firm control on timing of compliance with the statute's requirements, which the legislature has deemed important and fair to defendants.

### III

The court will use the foregoing guidelines in deciding this motion.

The court will summarize its position and try to apply its reasoning to the facts of this case. Although, for the reasons stated, the motion to dismiss referred to in subsection (c) of § 52-190a does not raise an issue of subject matter jurisdiction, the court cannot agree that inadequacy of the attached opinion referred to in subsection (a) can only be raised by a motion to strike or somehow that a motion to dismiss will not lie.

Subsection (a) requires a written opinion by a health care provider, pursuant to General Statutes § 52-184c, and further states that the written opinion must state that "there appears to be evidence of medical negligence" and must "[include] a detailed basis for the formation of such opinion. . . ." P.A. 05-275, § 2. Subsection (c) then states that "failure to obtain and file the written opinion required by subsection (a) of this section shall be grounds for the dismissal of the action." Id. The "written opinion" referred to in subsection (c) obviously refers to the "written opinion" in subsection (a), and in subsection (a) it is clear that the legislature meant to define "written opinion" as the phrase is used in both subsections—one from a health care provider (§ 52-184c) and with "a detailed basis" for the opinion as to medical negligence.

The court will now try to apply the foregoing to the facts of this case as set forth in the complaint. Pseudonym status was given to a mother, Jane Doe, who brought an action on behalf of her minor child, John Doe, who it is alleged was sexually assaulted.[2] The mother contacted the defendant, Priority Care, Inc., to obtain a mentor for her child. Priority Care, Inc., assigned an employee to mentor the child, and this employee was discharged within two months of the assignment. Priority Care, Inc., allegedly never told the mother the reason for the termination. The complaint alleges that this employee assaulted the minor child over a period of time. The mother contacted the police, who obtained a warrant, and when the police sought to serve the warrant, the employee committed suicide. The claim against Priority Care, Inc., is based on an alleged lack of supervision of its employee, failure to conduct a background check, failure to discharge him when he posed a risk, failure to notify families that the employee was discharged and failure to investigate whether the employee had conducted himself appropriately with the children he was mentoring.

Priority Care, Inc., has in turn filed an apportionment complaint against Clifford Beers Clinic, from which the minor plaintiff was receiving outpatient mental, health and behavioral services. The claim is made that the clinic knew or should have known of the inappropriate relationship between the Priority Care, Inc., employee and the minor plaintiff, and taken action to investigate the relationship, to report it or to terminate it. The clinic also never warned the families about the situation. Priority Care, Inc., advances a similar theory in its apportionment complaint against Guita Epstein, a physician

[2] In accordance with the policy of protecting the privacy interests of the victims of sexual abuse, the court declines to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

who was employed by the clinic, and Eileen MacDonald, who was also employed by the clinic.

' The apportionment complaint defendants, just mentioned, have now filed motions to dismiss based on the court's alleged lack of subject matter jurisdiction pursuant to subsections (a) and (c) of § 52-190a. The amended statute and its requirements can be directed against apportionment complaints. The basis of these motions is that the statute has not been complied with because the required written and signed opinion of a similar health care provider "has not been obtained and attached to the good faith certificate; there is no "detailed basis for the formation" of the opinion as to "evidence of medical negligence." For reasons previously stated, the court believes a subject matter jurisdiction analysis is not appropriate; what we are dealing with is the power of a trial court to render a discretionary dismissal.

In this case, the argument for dismissal rests, as noted, on the alleged inadequacies in the written opinion because of its failure to supply a detailed basis as to medical negligence. The opinion does identify its writer as a § 52-184c health care provider and indicates that the psychiatrist rendering it is board certified. The opinion is based on what the author states is a "reasonable degree of medical certainty" and states that in the author's opinion, each of the apportionment defendants "deviated from the applicable standard of care causing injury to the plaintiff." The letter then merely lists the materials reviewed by the expert, which include the complaint and case incident reports from the police department. Finally, the expert reviewed Priority Care, Inc., records regarding the care provided the plaintiff, an initial assessment, a plan of care, management and behavioral notes.

Given the expert's background, the task assigned the expert, the extensive records he examined and the reasonable certainty opinion given as to medical negligence, it would be a departure from the ordinary understanding of the English language for the court to conclude that there was no "good faith" basis to bring this litigation. But the assurance of "good faith" in bringing these actions is only part of the goal the legislature sought to achieve. A detailed basis for the opinion must be provided to the defendant medical care provider so he, she or it can ascertain the basis of the claim of professional negligence and begin to prepare a defense. To merely catalogue a series of reports or documents will not suffice. The grounds the expert relies on to reach his opinion must be the specific grounds the expert claims his opinion is based on from an examination of any material provided to the expert. A mere cataloging of reports and documents examined does not give a basis for the claim or the nature of the allegation regarding professional negligence that the defendant will have to face. See *Meizies* v. *Wawa, Inc.*, Superior Court, judicial district of New Haven, Docket No. 377633 (December 15, 1993) (15 Conn. L. Rptr. 537).

In the excellent brief submitted by counsel for Epstein, it is noted that Senator Kissel stated that the reason for the amendment was to rectify the situation where "months could go by, even over a year, until defense counsel and their clients could really narrow down exactly what was the basis for the determination of the basis for the plaintiff's claim that there was medical malpractice and why they had brought the case." Under at least this court's analysis of the ambit of the amended statute, that should not be allowed to happen here.

It is the order of the court that by May 21, 2007, a written opinion be filed in which the plaintiff's expert indicates what in the materials examined led the expert

to come to the opinion of professional negligence as to each apportionment defendant and how in fact each of the apportionment defendants was separately negligent. The matter will be put on the court's short calendar for Tuesday, May 29, 2007. If an appropriate amended opinion is not rendered to any apportionment defendant, the apportionment complaint as to that defendant will be dismissed.