COMMISSIONER OF TRANSPORTATION *v.* ISIS REALTY ASSOCIATES LIMITED PARTNERSHIP ET AL.

COMMISSIONER OF TRANSPORTATION *v.* ISISTERS, LLC
(AC 30797)

Gruendel, Robinson and Alvord, Js.

Argued February 2—officially released May 11, 2010

*Alan N. Ponanski*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *Brian J. Comerford*, assistant attorney general, for the appellant (plaintiff in both cases).

*Benson A. Snaider*, with whom, on the brief, was *Robert T. Morrin*, for the appellees (named defendant in the first case, defendant in the second case).

*Opinion*

ALVORD, J. In this consolidated action, the plaintiff, the commissioner of transportation (commissioner), appeals from the trial court's judgments in favor of the defendants, ISIS Realty Associates Limited Partnership and ISISTERS, LLC,[1] which increased the amount of damages assessed in connection with the commissioner's condemnation of easement interests over the defendants' properties by eminent domain. On appeal, the commissioner claims that the court improperly awarded the defendants title search fees as costs under General Statutes § 52-257 (b) (4). We agree and reverse in part the judgments of the trial court.

---

[1] Wachovia Bank, which had been named as a defendant, is not involved in this appeal. We therefore refer in this opinion to ISIS Realty Associates Limited Partnership and ISISTERS, LLC, as the defendants.

The record reveals the following facts and procedural history. The defendants own adjacent properties located in an industrial park on Viaduct Road in Stamford. The commissioner, pursuant to General Statutes § 13b-36 (a),[2] condemned a perpetual easement for fiber optic cables on telephone poles running down the middle of the boundary line of the two parcels and assessed total damages in the amount of $38,100. Each defendant filed an application for a reassessment of the damages by the commissioner pursuant to General Statutes § 13a-76.[3] The cases were consolidated, and a hearing

[2] General Statutes § 13b-36 (a) provides: "The commissioner [of transportation] may purchase or take and, in the name of the state, may acquire title in fee simple to, or any lesser estate, interest or right in, any land, buildings, equipment or facilities which the commissioner finds necessary for the operation or improvement of transportation services. The determination by the commissioner that such purchase or taking is necessary shall be conclusive. Such taking shall be in the manner prescribed in subsection (b) of section 13a-73 for the taking of land for state highways."

General Statutes § 13a-73 (b) provides in relevant part: "The commissioner may take any land he finds necessary for the layout, alteration, extension, widening, change of grade or other improvement of any state highway . . . and the owner of such land shall be paid by the state for all damages . . . resulting from such taking . . . . The assessment of such damages . . . shall be made by the commissioner and filed by him with the clerk of the superior court . . . . Upon filing an assessment with the clerk of the court, the commissioner shall forthwith sign and file for record with the town clerk of the town in which such real property is located a certificate setting forth the fact of such taking, a description of the real property so taken and the names and residences of the owners from whom it was taken. *Upon the filing of such certificate, title to such real property in fee simple shall vest in the state of Connecticut, except that, if it is so specified in such certificate, a lesser estate, interest or right shall vest in the state. . . .*" (Emphasis added.)

[3] General Statutes § 13a-76 provides in relevant part: "Any person claiming to be aggrieved by the assessment of such special damages . . . by the commissioner may, at any time within six months after the same has been so filed, apply to the superior court . . . for a reassessment of such damages . . . so far as the same affect such applicant. . . . The court or . . . judge trial referee . . . shall hear the applicant and the commissioner, may view the land, and shall take such testimony as the court or . . . judge trial referee deems material and shall thereupon reassess such damages . . . so far as they affect such applicant. . . . If the amount of the reassessment of such damages awarded to any such property owner exceeds the amount

was held on October 1 and 8, 2008. The court issued its memorandum of decision on November 13, 2008, in which it found the value of the taking to be $220,800, and ordered that amount, less the deposits already paid by the commissioner, to be divided equally between the two defendants. On December 10, 2008, with the consent of counsel, the court supplemented its judgment by ordering the commissioner to pay the defendants appraiser's fees in the amount of $7750 and interest at the rate of 6 percent per annum on the unpaid balance from the date of the taking until the date of payment.

On December 3, 2008, each defendant filed a notice of taxation of costs with an attached bill of costs that included a title search fee of $250 for each property.[4] The commissioner filed an objection to the requests for title search fees on December 4, 2008. On December 11, 2008, the defendants jointly filed a revised bill of costs, which included their actual combined title search expenses of $813. The court scheduled a hearing for January 26, 2009. At the conclusion of the hearing, the court awarded costs in the total amount of $375, which included a title search fee of $250.[5] On January 27, 2009,

of the assessment of such damages by the commissioner for such land, the court or . . . judge trial referee shall award to such property owner such appraisal fees as the court or . . . judge trial referee determines to be reasonable. . . ."

[4] We note that each defendant requested $250 instead of the $225 authorized by statute. Section 52-257 (b) (4) provides that a prevailing party shall receive "in any civil action affecting the title to real property . . . the actual expense, not exceeding the sum of two hundred twenty-five dollars, of an examination of the land records concerning the title to the real property in question . . . ."

[5] Although we have reviewed the record and the transcript, it is not clear whether the court made one or two awards of $250 to compensate the defendants for their title search expenses. The judgment file, which contains both docket numbers, indicates an award of $250 for title search fees: "Whereupon it is adjudged [that] the plaintiff pay to the defendants . . . [an] appraiser's fee in the amount of $7750 and $375 [in] costs, which includes [a] $250 title search fee." On January 29, 2009, however, the defendants submitted a corrected bill of costs in each action, reflecting the court's

the commissioner filed a motion for reconsideration of the court's decision to award title search fees, which was denied by the court on February 2, 2009. This appeal followed.

The sole issue on appeal is whether the court properly ordered the state to pay title search fees as costs to the prevailing party in a reassessment proceeding. We begin with the well established principle that "[c]osts cannot be taxed against the state in the absence of a statute specifically allowing such taxation. . . . This rule is based on the principle of sovereign immunity of the state." (Citation omitted.) *Fukelman* v. *Middletown*, 4 Conn. App. 30, 32, 492 A.2d 214 (1985). The statutory authority for the recovery of costs against the state in this proceeding is General Statutes § 13a-77, which provides: "In any appeal to the Superior Court taken under and by virtue of the provisions of this part, when the appellant obtains an award from the court greater than that awarded by the commissioner, costs of court shall be awarded the appellant and taxed against said commissioner in addition to the amount fixed by the judgment." In the present case, the defendants received an award that was greater than the one awarded by the commissioner. Therefore, under the statute, they were entitled to court costs in addition to the amount fixed for damages.

Section 52-257 is our statute providing court costs in civil actions. This statute provides an enumerated list of fees that are recoverable by a party. Of relevance to the present matter is subsection (b) (4), which allows a prevailing party "in any civil action affecting the title

award of appraiser's fees and the award of title search fees in both actions on January 26, 2009. On each corrected bill of costs, there is a title search fee of $250 and a notation by the court clerk that the costs were taxed on February 25, 2009. Because of the conclusion we reach in this opinion, however, it is not necessary to request a clarification from the court with respect to this matter.

to real property situated in this state . . . [to recover] the actual expense, not exceeding the sum of two hundred twenty-five dollars, of an examination of the land records concerning the title to the real property in question . . . ." General Statutes § 52-257 (b) (4). The defendants argued, and the trial court agreed, that title search fees were recoverable because the reassessment proceeding was a civil action affecting the title to the defendants' properties. The commissioner's position, at trial and on appeal, is that the action did not affect title because title already had vested in the state and this particular action was limited to the reassessment of damages caused by the taking.

The issue raised in this appeal, namely, whether a proceeding to reassess the damages in connection with the condemnation of real property interests by the state pursuant to § 13b-36 (a) is an action affecting title to real property, is an issue of statutory construction. "Issues of statutory construction raise questions of law, over which we exercise plenary review. . . . The process of statutory interpretation involves the determination of the meaning of the statutory language as applied to the facts of the case, including the question of whether the language does so apply." (Internal quotation marks omitted.) *Felician Sisters of St. Francis of Connecticut, Inc.* v. *Historic District Commission*, 284 Conn. 838, 847, 937 A.2d 39 (2008).

"When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering

such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." (Internal quotation marks omitted.) *Alvord Investment, LLC* v. *Zoning Board of Appeals*, 282 Conn. 393, 401–402, 920 A.2d 1000 (2007). "The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation." (Internal quotation marks omitted.) *Alexson* v. *Foss*, 276 Conn. 599, 605, 887 A.2d 872 (2006).

The phrase "affecting the title to real property" is not statutorily defined. It is well settled that, in the absence of any statutory definition, "words and phrases shall be construed according to the commonly approved usage of the language . . . . General Statutes § 1-1 (a). We ordinarily look to the dictionary definition of a word to ascertain its commonly approved usage." (Internal quotation marks omitted.) *Director of Health Affairs Policy Planning* v. *Freedom of Information Commission*, 293 Conn. 164, 184, 977 A.2d 148 (2009). According to the American Heritage Dictionary of the English Language (New College Ed. 1981), the word "affect" means: "1. To have an influence on; bring about a change in."

We conclude that the reassessment of damages pursuant to § 13a-76 did not affect the title to the defendants' properties because the proceeding did not have an influence on or bring about a change in the ownership of those properties. General Statutes § 13a-73 (b) expressly provides that title to the interest in real property taken by eminent domain vests in the state *upon the filing of the certificate of condemnation* in the land records. In the present case, the record reflects that the certificates of condemnation for both properties were filed in the Stamford land records on September 11, 2006. The defendants filed their applications for reassessment of damages on March 7, 2007, after title to the easement interests at issue already had vested in the state.

"It is well established by our case law that the scope of a § 13a-76 proceeding is limited to a reassessment of the damages offered by the commissioner for a taking. . . . If a condemnee wants to challenge the validity of the condemnation, he or she must bring a separate action for injunctive relief." (Citations omitted.) *Commissioner of Transportation* v. *Larobina*, 92 Conn. App. 15, 29, 882 A.2d 1265, cert. denied, 276 Conn. 931, 889 A.2d 816 (2005). The proceeding before the court did not concern title, but rather determined the value of the interests in the properties taken by the state. Simply put, title was not an issue in this reassessment proceeding.

The defendants argue, however, that they had to provide certificates of title to obtain the moneys deposited into court by the commissioner when the parties could not agree on the amount to be paid as just compensation for the interests in the properties taken by eminent domain. See General Statutes § 48-11.[6] In order to provide certificates of title, the defendants incurred title search expenses. For that reason, they claim that the action affected the title to their properties because they could not obtain compensation for the interests taken without an examination of the land records.

The procedure followed by the Superior Court in releasing the deposits made pursuant to § 48-11 is not

---

[6] General Statutes § 48-11 provides in relevant part: "Whenever the state takes property under any provision of the general statutes . . . and the state and the owner or owners of such property or of any interest therein are unable to agree on the amount to be paid as just compensation for such property, the taking authority shall file, with the clerk of the court to which a petition for the assessment of just damages has been preferred, a statement of the sum of money estimated by such authority to be just compensation for the property or interest therein taken. Such sum shall be deposited in said court to the use of the person or persons entitled thereto . . . . Upon the application of any such owner or owners, the court, after determining the equity of the applicant in such deposit, may order that the money so deposited, or any part thereof, be paid forthwith for or on account of the just compensation to be awarded in such proceeding. . . ."

a part of the record in this case. The language of § 48-11 does not require the owner of the property taken by eminent domain to provide a certificate of title to the clerk of the court. The statute simply provides that the court, upon its determination of the applicant's equity in such deposit, then will release the appropriate amount so deposited. The manner in which the court makes such a determination is not specified.

For these reasons, we conclude that there is no statutory authority for awarding a prevailing party title search fees as costs against the state in a condemnation appeal taken pursuant to § 13a-76. We will not construe the unambiguous language of § 52-257 (b) (4) to permit the recovery of such fees in a § 13a-76 action. If the legislature intended to allow the taxing of title search fees against the state in a reassessment proceeding, it could have explicitly so stated. "It is a matter for the legislature, not this court, to determine when our state's sovereign immunity should be waived. . . . Any statutory waiver of immunity must be narrowly construed." (Citations omitted; internal quotation marks omitted.) *Struckman* v. *Burns*, 205 Conn. 542, 558, 534 A.2d 888 (1987).

The judgments are reversed only as to the award of title search fees and the cases are remanded with direction to vacate that award. The judgments are affirmed in all other respects.

In this opinion the other judges concurred.