******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# TYISHA S. WALLACE *v.* CARING SOLUTIONS, LLC
## (AC 43975)

Bright, C. J., and Alvord and Lavine, Js.

*Syllabus*

The plaintiff, a certified nursing assistant, sought to recover damages from the defendant for an alleged violation of the Connecticut Fair Employment Practices Act (CFEPA) (§ 46a-60), for failing to hire the plaintiff, who is hard of hearing, on the basis of her disability. During the hiring interview with S, the owner and administrator of the defendant, the plaintiff asked S to speak up, as she had trouble hearing her. S subsequently asked how the plaintiff would be able to hear her clients and the plaintiff responded that she had no problem communicating with her nonverbal autistic son. The interview continued with no further questions regarding the plaintiff's disability but, instead, focused on the plaintiff's sporadic work history. After the interview, S received a fax containing employment discrimination information from the plaintiff's mother, which S interpreted as a potential threat of litigation. Thereafter, the defendant did not hire the plaintiff. Subsequently, the plaintiff filed her discrimination action with the trial court, which determined that the plaintiff had not proven that the reason she was not hired by the defendant was because of her hearing disability, and that the reasons given by the defendant for not hiring the plaintiff, the gaps in her employment history, her reliability, and the fax sent by her mother, were not due to intentional discrimination. On appeal to this court, the plaintiff claimed, inter alia, that the trial court applied the incorrect legal standard for determining the defendant's liability under CFEPA. *Held*:

1. The plaintiff could not prevail on her claim that the trial court erred in applying the but-for causation standard in reviewing her disability claim pursuant to CFEPA, as the trial court properly applied the motivating factor test as the causation standard, which required the plaintiff to prove only that the illegal discrimination was a cause of the adverse employment action: although the trial court's decision did not state which causation test it applied, the court's use in its memorandum of decision of the phrase "because of," when it stated that the plaintiff had failed to prove that she was not hired because of her hearing disability, was not inconsistent with the court's application of the motivating factor test, as both our Supreme Court and this court have interpreted the phrase "because of" in CFEPA as incorporating the motivating factor test; moreover, the language of the court's memorandum of decision was completely consistent with its application of the motivating factor test, as the court's findings made clear that it concluded that the plaintiff had failed to prove that her hearing disability played any role in the defendant's decision not to hire her and, therefore, was not a motivating factor, the record having supported the court's conclusion in crediting S's testimony that she decided not to hire the plaintiff because she had concerns about the plaintiff's work history and felt threatened by the fax from the plaintiff's mother.

2. Contrary to the plaintiff's claim, statements in the defendant's pretrial brief alleging that the plaintiff was not hired because of concerns that her hearing impairment could endanger her clients were not judicial admissions: although it is possible that, in certain circumstances, an attorney's unequivocal representations of facts on behalf of his client could constitute a judicial admission, the defendant made no clear, deliberate and unequivocal or voluntary and knowing concessions of fact, and, instead, set forth the arguments it intended to make based on the evidence it expected to be admitted at trial and explicitly referred to those statements as arguments, and those statements constituted, at most, evidentiary admissions that the trial court was free to accept or disregard; moreover, the plaintiff could not prevail on her claim that the court's findings were clearly erroneous in that the court failed to give sufficient weight to the different explanations offered by the defendant for not hiring the plaintiff, as the record sufficiently supported the trial court's finding that the plaintiff had failed to prove that she was

not hired because of her disability and the trial court was free to weigh the evidence, consider the parties' credibility, and decide the facts based on all the information, and not just the particular statements on which the plaintiff focused and, accordingly, regardless of the different statements that the defendant made in its pretrial brief, the trial court's finding that the plaintiff failed to prove her discrimination claim was not clearly erroneous.

Argued February 2—officially released July 5, 2022

*Procedural History*

Action to recover damages for alleged employment discrimination, and for other relief, brought to the Superior Court in the judicial district of Hartford and tried to the court, *Honorable A. Susan Peck*, judge trial referee; judgment rendered for the defendant, from which the plaintiff appealed to this court. *Affirmed.*

*James V. Sabatini*, with whom, on the brief, was *Zachary T. Gain*, for the appellant (plaintiff).

*George C. Schober*, for the appellee (defendant).

*Opinion*

BRIGHT, C. J. The plaintiff, Tyisha S. Wallace, appeals from the judgment of the trial court rendered after a trial to the court in favor of the defendant, Caring Solutions, LLC. On appeal, the plaintiff claims that the court erred when it rendered judgment for the defendant because the court (1) applied the wrong causation standard to the plaintiff's discrimination claim and (2) failed to find that certain statements in the defendant's pretrial brief were binding judicial admissions and ignored other statements made by the defendant that conflicted with its purported, nondiscriminatory reason for not hiring the plaintiff. We affirm the judgment of the trial court.

The following facts, as found by the court, and procedural history are relevant to our disposition of this appeal. The plaintiff has been hard of hearing since birth and a licensed certified nursing assistant since 2002. "She hears at a level of 40 percent in her left ear and 20 percent in her right ear. . . . She is able to hear with hearing aids and can [also] read lips . . . . She can work as a [certified nursing assistant] provided she wears hearing aids." The defendant provides at-home health care to elderly and disabled individuals "who wish to remain in their homes and need help caring for themselves."

On July 25, 2015, the plaintiff applied for a certified nursing assistant position with the defendant by submitting a preemployment screening form. "At the time of her employment application with the defendant, the plaintiff had sporadic work experience in home health care. . . . When she first became a [certified nursing assistant] in 2002, she worked mainly for nursing pool agencies in nursing homes, including Maximum Healthcare and MGM Healthcare, but these were not listed on either her application or her questionnaire. . . . Her first job as a [certified nursing assistant] was at Avery Heights in April, 2002. . . . In May, 2006, for a period of time, she worked at Kettlebrook. . . . She was fired from Kettlebrook for missing too many days of work. . . . From January to March, 2012, she worked for Comfort Keepers as a [certified nursing assistant]. . . . From December, 2014 to July, 2015, she worked as a [certified nursing assistant] or home health aide at Interim Health Care, a home health care agency, but ultimately was not able to work the number of hours she had hoped." (Footnote omitted.)

After submitting the prescreening form, the plaintiff received a phone call from Carol Censki, the defendant's human resources administrator, who asked the plaintiff to come in for an initial interview. On July 28, 2015, Censki interviewed the plaintiff and gave her a preemployment exam, which the plaintiff passed. Censki then had the plaintiff complete a formal application

for a position with the defendant as either a full-time or part-time caregiver.

On July 30, 2015, the plaintiff returned to the defendant's office for a second interview, this time with Censki and Sandra Sergeant, the owner and administrator of the defendant. "Sergeant is a registered nurse who has worked in hospitals, nursing homes and home health care. . . . She started the defendant home health care company in 2000 with ten employees. . . . She now employs approximately eighty-five people. . . . The defendant provides home health aides for elderly and disabled clients. . . . It is a requirement of the job of a home health aide to be able to hear the clients he/she is serving. . . . Sergeant has interviewed thousands of potential employees. . . . Reliability is an essential qualification for a home health aide. . . . Sergeant evaluates the reliability of potential employees based on their work history. . . . The defendant has hired individuals as home health aides with disabilities and has made reasonable accommodations in the past. . . . The defendant hires and trains some [home] health aides directly out of school and also sometimes hires experienced home health aides for a probationary period." During the interview, Sergeant questioned the plaintiff about her certified nursing assistant license, her work experience, and several gaps in her employment history. Approximately twenty to twenty-five minutes into the interview, the plaintiff asked Sergeant to speak up and then informed Sergeant and Censki that she was hard of hearing. Sergeant responded by asking the plaintiff how she would hear her clients. The plaintiff replied that "she had a nonverbal autistic child with whom she had no trouble communicating." Sergeant found this explanation plausible. The interview continued for another ten minutes, during which time Sergeant mostly focused on the plaintiff's work history because it was sporadic.

After the interview, Sergeant went to her office to get a business card to give to the plaintiff. While the plaintiff and Censki waited for Sergeant to return, the plaintiff told Censki that she had a really hard time hearing Sergeant. When Sergeant returned, she gave the plaintiff her business card and told the plaintiff to call her. The plaintiff, however, never called Sergeant as requested.

"Following the interview, the plaintiff's feelings were hurt and her self-esteem damaged. . . . She was upset, started crying, and called her mother, Mitzi Treadwell-Green, who is also a registered nurse. . . . Treadwell-Green was 'appalled' and indignant to learn that Sergeant had asked the plaintiff if she was going to hear the clients. . . . She asked the plaintiff for Sergeant's contact information and told the plaintiff that she was going to fax Sergeant some information about discrimination." Thereafter, Treadwell-Green "faxed Sergeant

a document in the form of a notice issued by the Connecticut Department of Labor" concerning "[d]iscrimination laws regarding disabilities." Sergeant was shocked to receive the fax and believed it was "some sort of implied threat." The defendant did not hire the plaintiff. Then, on July 13, 2017, the plaintiff filed a one count complaint alleging that the defendant had violated the Connecticut Fair Employment Practices Act (CFEPA), General Statutes § 46a-60,[1] because the defendant had "failed to hire the plaintiff on the basis of her hearing impairment" and, thus, had "intentionally discriminated against the plaintiff." On August 15, 2018, the defendant filed an answer and special defenses to the plaintiff's complaint. The defendant denied the plaintiff's allegations of discrimination and, as a special defense, pleaded that "[t]he defendant had legitimate nondiscriminatory reasons for not hiring the plaintiff."

A two day trial to the court was held on June 6 and 7, 2019. At trial, Sergeant testified that she initially had concerns about hiring the plaintiff because of her limited work history and the significant gaps in that work history. Although the plaintiff had been a licensed certified nursing assistant since 2002, she had "sporadic work experience in home health care." Given her work history, Sergeant was not confident that the plaintiff would be a reliable employee. Sergeant also testified that receiving the fax further compounded her concerns about hiring the plaintiff. Sergeant also testified that she had hired and accommodated employees with disabilities in the past. According to Sergeant, it was due to her concerns about the plaintiff's reliability and the fax that she received from Treadwell-Green, and not because of the plaintiff's hearing impairment, that she decided not to hire the plaintiff. The court found Sergeant's testimony as to her reasons for not hiring the plaintiff to be credible and persuasive.

The court found that the plaintiff had proven "by a preponderance of the evidence that she is disabled within the meaning of CFEPA" and had "established that she is able to perform the essential functions of the job as a home health aide or [certified nursing assistant] with reasonable accommodation in the form of hearings aids." The court also found, however, that the plaintiff "has not proven . . . that the reason she was not hired by the defendant was because of her hearing disability, or that the defendant was unwilling to accept her as an employee with hearing aids as a reasonable accommodation. Rather, the court finds that the reasons given by the defendant for not hiring the plaintiff . . . were not due to intentional discrimination because of the plaintiff's disability." Accordingly, the court rendered judgment for the defendant. The plaintiff appealed.

I

The plaintiff first claims that the court applied the incorrect legal standard for determining the defendant's

liability when it concluded that the plaintiff's disability was not the "but-for" cause of the defendant's failure to hire her instead of considering whether her disability was a "motivating factor" in the defendant's hiring decision. The difference between the two tests is significant. Under the but-for test, the plaintiff must establish that the illegal discrimination was *the* cause of the adverse employment action. Under the motivating factor test, the plaintiff must prove only that the illegal discrimination was *a* cause of the adverse employment action. Specifically, the plaintiff argues that CFEPA, properly interpreted, does not require a plaintiff to prove but-for causation. The plaintiff further claims that under the motivating factor test, the court would have been required to render judgment for her because the evidence established that her hearing disability was a cause of the defendant's decision not to hire her. The defendant argues that, pursuant to the United States Supreme Court's decision in *Gross* v. *FBL Financial Services, Inc.*, 557 U.S. 167, 173–78, 129 S. Ct. 2343, 174 L. Ed. 2d 119 (2009), which determined that the but-for test, not the motivating factor test, was appropriate for claims under the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. § 621 et seq., and, which the United States Court of Appeals for the Second Circuit has since applied to claims arising under the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. 12101 et seq., the plaintiff must establish but-for causation under the similarly worded CFEPA. Alternatively, the defendant argues that, even if the motivating factor test is applied, it is clear from the court's findings that the plaintiff's disability played no role in the defendant's decision not to hire her. We agree with the plaintiff that the correct causation standard under CFEPA is the motivating factor test. We disagree, however, with the plaintiff's claim that the court failed to apply the motivating factor test in resolving the underlying action.

A

We begin by addressing whether the proper causation standard under CFEPA is the but-for or motivating factor test. Resolving this issue requires us to interpret the provisions of CFEPA to determine the appropriate burden of proof a plaintiff must meet to prove that an employer's adverse employment action was caused by discriminatory conduct. "When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does

not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . Because issues of statutory construction raise questions of law, they are subject to plenary review on appeal." (Internal quotation marks omitted.) *Robinson* v. *Tindill*, 208 Conn. App. 255, 264, 264 A.2d 1063, cert. denied, 340 Conn. 917, 265 A.3d 926 (2021).

General Statutes § 46a-60 (b) provides in relevant part: "It shall be a discriminatory practice in violation of this section . . . [f]or an employer, by the employer or the employer's agent, except in the case of a bona fide occupational qualification or need, to refuse to hire or employ . . . any individual . . . because of the individual's race, color, religious creed, age, sex, gender identity or expression, marital status, national origin, ancestry, present or past history of mental disability, intellectual disability, learning disability, physical disability, including, but not limited to, blindness or status as a veteran. . . ." The question we must decide is whether the "because of" language in the statute requires a plaintiff to establish but-for causation, as the defendant contends, or merely that discrimination based on one or more of the enumerated statutory characteristics was a motivating factor in the decision not to hire. Although neither our Supreme Court nor this court has addressed this precise issue, a number of Superior Court and United States District Court decisions have. There is a split of authority among those courts. Compare *Weisenbach* v. *LQ Management*, United States District Court, Docket No. 3:13-CV-01663 (MPS) (D. Conn. September 25, 2015) (motivating factor standard applies to CFEPA claims), and *Wagner* v. *Board of Trustees*, Superior Court, judicial district of Hartford, Docket No. CV-08-5023775-S (January 30, 2012) (same), with *Fasoli* v. *Stamford*, 64 F. Supp. 3d 285, 313 (D. Conn. 2014) (but-for standard applies to CFEPA claims), and *Marasco* v. *Connecticut Regional Vocational-Technical School System*, Superior Court, judicial district of Waterbury, Docket No. CV-09-5014324-S (October 15, 2012) (54 Conn. L. Rptr. 812) (same), rev'd in part on other grounds, 153 Conn. App. 146, 100 A.3d 930 (2014), cert. denied, 316 Conn. 901, 111 A.3d 469 (2015). To put those decisions and our analysis in the proper context, some history is helpful.

In *Levy* v. *Commission on Human Rights & Opportunities*, 236 Conn. 96, 104–109, 671 A.2d 349 (1996), a case in which the plaintiff asserted a CFEPA claim based on alleged discrimination due to a hearing disability, our Supreme Court discussed the two models used at that time by courts to allocate the burden of proof, and, accordingly, to establish the proper causation standard, in a disparate treatment case under CFEPA: the mixed-motive model and the pretextual model. The mixed-motive model originated in the United States Supreme Court's decision in *Price Waterhouse* v. *Hopkins*, 490 U.S. 228, 246, 109 S. Ct. 1775, 104 L. Ed. 2d

268 (1989) (plurality opinion), wherein a plurality of the court applied the model to a sex discrimination claim under Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e et seq. "A mixed-motive case exists when an employment decision is motivated by both legitimate and illegitimate reasons. . . . In such instances, a plaintiff must demonstrate that the employer's decision was motivated by one or more prohibited statutory factors. Whether through direct evidence or circumstantial evidence, a plaintiff must submit enough evidence that, if believed, could reasonably allow a [fact finder] to conclude that the adverse employment consequences resulted because of an impermissible factor. . . .

"The critical inquiry [in a mixed-motive case] is whether [a] discriminatory motive was a factor in the [employment] decision at the moment it was made. . . . Under this model, the plaintiff's prima facie case requires that the plaintiff prove by a preponderance of the evidence that he or she is within a protected class and that an impermissible factor played a motivating or substantial role in the employment decision. . . .

"Once the plaintiff has established his prima facie case, the burden of production and persuasion shifts to the defendant. [T]he defendant may avoid a finding of liability only by proving by a preponderance of the evidence that it would have made the same decision even if it had not taken [the impermissible factor] into account." (Citations omitted; footnote omitted; internal quotation marks omitted.) *Levy* v. *Commission on Human Rights & Opportunities*, supra, 236 Conn. 105–106.

In contrast, under the pretextual model, also called the *McDonnell Douglas-Burdine*[2] model, a plaintiff may establish discrimination by inference rather than direct evidence. "Often, a plaintiff cannot prove directly the reasons that motivated an employment decision. Nevertheless, a plaintiff may establish a prima facie case of discrimination through inference by presenting facts [that are] sufficient to remove the most likely bona fide reasons for an employment action . . . . From a showing that an employment decision was not made for legitimate reasons, a fact finder may infer that the decision was made for illegitimate reasons. It is in these instances that the *McDonnell Douglas-Burdine* model of analysis must be employed. . . .

"The plaintiff's burden of establishing a prima facie case is not onerous under this model. . . . The plaintiff need prove only four elements by a preponderance of the evidence: (1) that he or she belongs to a protected class; (2) that he or she applied and was qualified for the position in question; (3) that despite his or her qualifications, the individual was rejected; and (4) that after the individual was rejected, the position remained open. . . . Once a plaintiff has established a prima

facie case of discrimination, a presumption of discrimination is created.

"Under the *McDonnell Douglas-Burdine* model, the burden of persuasion remains with the plaintiff. . . . Once the plaintiff establishes a prima facie case, however, the burden of production shifts to the defendant to rebut the presumption of discrimination by articulating (not proving) some legitimate, nondiscriminatory reason for the plaintiff's rejection. . . . Because the plaintiff's initial prima facie case does not require proof of discriminatory intent, the *McDonnell Douglas-Burdine* model does not shift the burden of persuasion to the defendant. Therefore, [t]he defendant need not persuade the court that it was actually motivated by the proffered reasons. . . . It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff. . . . Once the defendant offers a legitimate, nondiscriminatory reason, the plaintiff then has an opportunity to prove by a preponderance of the evidence that the proffered reason is pretextual. . . .

"The *McDonnell Douglas-Burdine* analysis keeps the doors of the courts open for persons who are unable initially to establish a discriminatory motive. If a plaintiff, however, establishes a *Price Waterhouse* prima facie case, thereby proving that an impermissible reason motivated a defendant's employment decision, then the *McDonnell Douglas-Burdine* model does not apply, and the plaintiff should receive the benefit of the defendant bearing the burden of persuasion." (Citations omitted; footnote omitted; internal quotation marks omitted.) Id., 107–109.

In *Levy*, the hearing officer found that the plaintiff was transferred from his position as an out of the area remote driver "*because of* his hearing disability." (Emphasis in original.) Id., 109. Our Supreme Court held that "[t]his . . . finding, standing alone, is direct evidence of an impermissible motive for transferring the plaintiff. . . . Because we conclude that the plaintiff had produced evidence that [the employer] *was motivated, at least in part,* by his disability in deciding to transfer him, we hold that the hearing officer should have used the mixed-motive model of analysis." (Emphasis added; footnote omitted.) Id., 109–10.

Although the court in *Levy* did not discuss the but-for test as a possible alternative to the motivating factor test, its analysis is important to our conclusion. The court clearly applied the motivating factor test to a claim of disability discrimination under CFEPA. Id., 109. Furthermore, it did so explicitly, relying on the hearing officer's finding that the plaintiff was transferred "because of" his hearing disability. Id., 109–10. Thus, the court concluded that the phrase "because of," the precise statutory words at issue in the present case, is consistent with the application of the motivating factor

test. Id. Since *Levy*, both our Supreme Court and this court repeatedly have held that the applicable causation standard under CFEPA is the motivating factor test. See, e.g., *Board of Education* v. *Commission on Human Rights & Opportunities*, 266 Conn. 492, 505, 832 A.2d 660 (2003) ("[w]hen a [complainant] alleges disparate treatment, liability depends on whether the protected trait . . . actually motivated the employer's decision" (footnote omitted; internal quotation marks omitted)); *Phadnis* v. *Great Expression Dental Centers of Connecticut, P.C.*, 170 Conn. App. 79, 90–91, 153 A.3d 687 (2017) ("the plaintiff is not required to show that the employer's proffered reasons were false or played no role in the employment decision, but only that they were not the only reasons and that the prohibited factor was at least one of the motivating factors" (internal quotation marks omitted)). Based on this precedent, it would appear that the motivating factor test is clearly the causation standard that applies to claims of disability discrimination that are brought pursuant to CFEPA.

Nevertheless, the defendant argues that our Supreme Court's analysis in *Levy* is outdated and should be abandoned because it relied on the plurality opinion in *Price Waterhouse* v. *Hopkins*, supra, 490 U.S. 228, which the United States Supreme Court disavowed in *Gross* v. *FBL Financial Services, Inc.*, supra, 557 U.S. 167, and its progeny, as to all discrimination claims except those based on an employee's race, color, religion, sex, or national origin. In *Gross*, the United States Supreme Court considered whether the causation standard under the ADEA was the but-for test or the motivating factor test and determined that the applicable causation standard was the but-for test. See *Gross* v. *FBL Financial Services, Inc.*, supra, 557 U.S. 176–78. The court reached this conclusion by comparing the statutory language of Title VII, which specifically states that the motivating factor test applies to claims brought pursuant to Title VII for discrimination based on race, color, religion, sex, or national origin, to that of the ADEA, which is silent as to the motivating factor test. Id., 176–78. The court then determined that, because "[u]nlike Title VII, the ADEA's text does not provide that a plaintiff may establish discrimination by showing that age was simply a motivating factor"; id., 174; and because the plain language of the ADEA instead uses the phrase " 'because of,' " which means " 'by reason of' " and " 'on account of,' " that "the ordinary meaning of the ADEA's requirement that an employer took adverse action 'because of' age is that age was *the* 'reason' that the employer decided to act." (Emphasis added.) Id., 176. Therefore, on the basis of the ADEA's use of the phrase because of, the court held that "a plaintiff bringing a disparate-treatment claim pursuant to the ADEA must prove, by a preponderance of the evidence, that age was the 'but-for' cause of the challenged adverse employment action." Id., 180.

Relying on the court's analysis in *Gross*, the United States Court of Appeals for the Second Circuit recently held that the but-for test also applied to a disability discrimination claim brought pursuant to Section 504 of the Rehabilitation Act of 1973 (Rehabilitation Act), 29 U.S.C. § 794 (a) through (d). See *Natofsky* v. *New York*, 921 F.3d 337, 347–50 (2d Cir. 2019), cert. denied, U.S. , 140 S. Ct. 2668, 206 L. Ed. 2d 822 (2020). In reaching this conclusion, the Second Circuit first held that, "when a plaintiff alleges an employment discrimination claim under the Rehabilitation Act, the causation standard that applies is the same one that would govern a complaint alleging employment discrimination under the ADA." Id., 345. The Second Circuit then agreed with the defendant that the but-for test applied to claims asserted under the ADA because the United States Supreme Court's decisions in *Gross* and *University of Texas Southwestern Center* v. *Nassar*, 570 U.S. 338, 133 S. Ct. 2517, 186 L. Ed. 2d 503 (2013), effectively overruled cases that had applied the motivating factor test to such claims. *Natofsky* v. *New York*, supra, 347. The Second Circuit then explained at length how the United States Supreme Court's jurisprudence had evolved on this issue. Id., 347–49.

"The mixed-motive test originates from Title VII, which prohibits employment discrimination because of an individual's race, color, religion, sex, or national origin. . . . In 1989, the Supreme Court in *Price Waterhouse* . . . read the prohibition against acting because of a discriminatory motive to mean that an employer cannot take any illegal criterion into account. . . . Thus, a defendant would be liable under Title VII if a plaintiff could demonstrate that discrimination was a motivating factor in the defendant's adverse employment action. . . . A defendant, however, could avoid all liability if it could prove it would have taken the same action regardless of any impermissible consideration. . . .

"In 1991, Congress amended Title VII and determined that an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a *motivating factor* for any employment practice, even though other factors also motivated the practice. . . . Congress disagreed that an employer could avoid all liability by proving it would still have taken the same adverse action in the absence of discriminatory motivation. Instead, where an employer could demonstrate that it would have taken the adverse action even in the absence of discriminatory motivation, Congress denied the plaintiff damages and limited the plaintiff's remedies to declaratory relief, injunctive relief . . . and attorney's fees and costs. . . . Even though *Price Waterhouse* and the subsequent 1991 Congressional amendments dealt only with Title VII, the majority of circuit

courts, including [the Second Circuit], held that the mixed-motive burden-shifting framework applied equally to other anti-discrimination statutes that employed the because of causation language, including, prior to 2008, the ADA. . . .

"In 2009, the Supreme Court in *Gross* addressed whether Title VII's motivating factor standard applied outside of the Title VII context to claims brought under the [ADEA] which prohibits employers from discriminat[ing] against any individual . . . because of such individual's age. . . . The [c]ourt held that it did not because [u]nlike Title VII, the ADEA's text does not provide that a plaintiff may establish discrimination by showing that age was simply a motivating factor. . . . Furthermore, the [c]ourt found that Congress must have omitted the language intentionally because, at the time it added §§ 2000e-2 (m) and 2000e-5 (g) (2) (B) to Title VII, Congress . . . contemporaneously amended the ADEA in several ways. . . . Examining the text of the ADEA, the [c]ourt concluded that the words because of mean that age was the reason that the employer decided to act. . . . Thus, the [c]ourt held that a plaintiff must prove that age was the but-for cause of the employer's adverse decision—not just a motivating factor. . . .

"In *Nassar*, the Supreme Court revisited the principle defined in *Gross*: that the text of an anti-discrimination statute must expressly provide for a motivating factor test before that test can be applied. The [c]ourt held that even though Title VII permits mixed-motive causation for claims based on the personal characteristics of race, color, religion, sex, or national origin (i.e., status-based discrimination), it does not permit mixed-motive causation for retaliation-based claims. . . . The [c]ourt based its holding on the text and structure of Title VII. . . . It noted that § 2000e-2 (m), which contains the mixed-motive causation provision, mentions just the . . . status-based [factors]; and . . . omits the final two, which deal with retaliation. . . . It also noted that Congress inserted [the mixed-motive test] within the section of the statute that deals only with [the status-based factors], not the section that deals with retaliation claims or one of the sections that apply to all claims of unlawful employment practices. . . . Because, according to the [c]ourt, Title VII has a detailed structure, the [c]ourt could conclude that Congress knew how to word the mixed-motive provision to encompass the anti-retaliation section and intentionally chose not to do so. . . . As a result, Title VII retaliation must be proved according to traditional principles of but-for causation, not the lessened causation test stated in § 2000e-2 (m). . . .

"*Gross* and *Nassar* dictate our decision here. The ADA does not include a set of provisions like Title VII's § 2000e-2 (m) (permitting a plaintiff to prove employ-

ment discrimination by showing that discrimination was a motivating factor in the adverse decision) and § 2000e-5 (g) (2) (B) (limiting the remedies available to plaintiffs who can show that discrimination was a motivating factor but not a but-for cause of the adverse decision). There is no express instruction from Congress in the ADA that the motivating factor test applies. Moreover, when Congress added § 2000e-2 (m) to Title VII, it contemporaneously amended the ADA but did not amend it to include a motivating factor test. . . . We, therefore, join the conclusion reached by the Fourth, Sixth, and Seventh Circuits that the ADA requires a plaintiff alleging a claim of employment discrimination to prove that discrimination was the but-for cause of any adverse employment action." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Natofsky* v. *New York*, supra, 921 F.3d 347–48.

Relying on the Second Circuit's analysis in *Natofsky*, the defendant argues that we should apply the but-for test to claims brought under CFEPA because CFEPA includes the same "because of" language that federal courts have equated with but-for causation and the statute contains no explicit reference to the motivating factor test. In making this argument, the defendant notes that we regularly look to federal employment discrimination cases when applying CFEPA; see *Curry* v. *Allan S. Goodman, Inc.*, 286 Conn. 390, 415, 944 A.2d 925 (2008); and further notes that a number of courts have held that Connecticut courts construe disability discrimination claims under CFEPA similarly to how discrimination claims are construed under the ADA. See, e.g., *Hopkins* v. *New England Health Care Employees Welfare Fund*, 985 F. Supp. 2d 240, 255 (D. Conn. 2013) ("[d]iscriminatory claims brought under CFEPA . . . are construed similarly to ADA claims, with Connecticut courts reviewing federal precedent concerning employment discrimination and retaliation for guidance in enforcing the CFEPA"); see also *Young* v. *Precision Metal Products, Inc.*, 599 F. Supp. 2d 216, 228 (D. Conn. 2009).

As noted previously in this opinion, since the United States Supreme Court's decision in *Gross*, a number of decisions from our Superior Court and the United States District Court for the District of Connecticut have addressed whether the proper test for a claim under CFEPA is the but-for or motivating factor test. In *Vale* v. *New Haven*, 197 F. Supp. 3d 389, 397–400 (D. Conn. 2016), Judge Charles S. Haight, Jr., catalogued those decisions at that time and the rationale for each side of the argument. More recently, in *Soares* v. *Altice Technical Services US, LLC*, United States District Court, Docket No. 3:19-cv-1975 (JBA) (D. Conn. August 6, 2021), Judge Janet Bond Arterton noted: "The Connecticut Supreme Court has not yet decided the issue, but application of the *Gross* rule appears disfavored in Connecticut trial courts." Until now, this court also has not

had the opportunity to resolve the issue. The present case gives us that opportunity and, for the reasons that follow, we conclude that, regardless of the United States Supreme Court's decision in *Gross* and the Second Circuit's decision in *Natofsky*, the motivating factor test remains the applicable causation standard under CFEPA.

First, the Connecticut Supreme Court is the ultimate authority on interpreting Connecticut statutes, including CFEPA. See *Johnson* v. *Manson*, 196 Conn. 309, 319, 493 A.2d 846 (1985) ("Connecticut is the final arbiter of its own laws"), cert. denied, 474 U.S. 1063, 106 S. Ct. 813, 88 L. Ed. 2d 787 (1986). Although Connecticut's appellate courts often look to federal precedent regarding employment discrimination for guidance in enforcing our own antidiscrimination laws, we are not bound by that precedent. See *Curry* v. *Allan S. Goodman, Inc.*, supra, 286 Conn. 415; *Vollemans* v. *Wallingford*, 103 Conn. App. 188, 199, 928 A.2d 586 (2007), aff'd, 289 Conn. 57, 956 A.2d 579 (2008). Moreover, as noted previously, our appellate courts always have applied the motivating factor test to discrimination claims under CFEPA; see, e.g., *Board of Education* v. *Commission on Human Rights & Opportunities*, supra, 266 Conn. 505; *Levy* v. *Commission on Human Rights & Opportunities*, supra, 236 Conn. 109–10; and have continued to do so even after the United States Supreme Court's decisions in *Gross* and *Nassar*. See *Commission on Human Rights & Opportunities ex rel. Arnold* v. *Forvil*, 302 Conn. 263, 278, 25 A.3d 632 (2011) (applying motivating factor test two years after decision in *Gross* in case involving claim of housing discrimination);[3] *Phadnis* v. *Great Expression Dental Centers of Connecticut, P.C.*, supra, 170 Conn. App. 90–91 (applying motivating factor test to pregnancy discrimination claim in 2017 after decision in *Nassar*).

Second, the interpretive rationale that is the underpinning for *Gross*, simply does not apply to CFEPA. The United States Supreme Court's conclusion that the but-for test applies to ADEA claims was based on the fact that Title VII makes explicit reference to the motivating factor test and the ADEA does not. Thus, the Supreme Court concluded that Congress must have intended that the motivating factor test not apply to age discrimination claims under the ADEA and was instead limited to claims under Title VII based on race, color, religion, sex, or national origin. The Second Circuit reached the same conclusion in *Natofsky* as to disability claims under the ADA and the Rehabilitation Act for the same reason. Neither of those acts makes any reference to the motivating factor test.

Connecticut's statutory scheme is much different. Unlike at the federal level, where employment discrimination law divides prohibited employment practices among various statutes,[4] the traits protected at the fed-

eral level by Title VII, the ADA, and the ADEA are all protected by a single statute in Connecticut, § 46a-60. Thus, although at the federal level, there is a rationale to utilize different causation standards depending on the language of the act involved, the same cannot be said for CFEPA. There is no basis for us to conclude that our legislature intended one causation standard for claims based on race, color, religion, sex, or national origin and a more stringent standard for disability based claims.

Furthermore, although our legislature has amended CFEPA several times since its initial adoption in 1949, it never has sought to alter the causation standard applied by our Supreme Court and this court to discrimination claims brought under the act. CFEPA has always provided that it is a violation of the act for any employer to refuse to hire any individual "because of" any of the listed traits. The legislature has never saw fit to define the phrase "because of." Significantly, it never amended CFEPA to provide a clearer definition of "because of" after our Supreme Court equated it with the motivating factor test in *Levy*. Nor did it provide a different definition of "because of" after the United States Supreme Court equated it with the but-for test in *Gross*. The legislature is presumed to be aware of the decisions of our courts and those of the United States Supreme Court. See *Angelsea Productions, Inc.* v. *Commission on Human Rights & Opportunities*, 236 Conn. 681, 693, 674 A.2d 1300 (1996). Had the legislature concluded that our Supreme Court incorrectly interpreted CFEPA as incorporating the motivating factor test, it could have amended the act, before or after *Gross*, to make clear that for a plaintiff to prevail under CFEPA he or she must show that the alleged discrimination was the but-for cause of the adverse employment action. The fact that the legislature has chosen not to do so, despite the many times it has amended CFEPA, including on several occasions since the United States Supreme Court decided *Gross*, confirms for us that it intended the motivating factor test, as set forth in *Levy*, to be the proper causation standard. This conclusion is further buttressed by the fact that our legislature has chosen not to follow the legislative approach taken by Congress of adopting different statutes to address different types of employment discrimination with varying causation burdens. Our legislature's decision to include multiple types of unlawful employment discrimination within a single statutory provision, without setting out distinctive standards for the different types, leads to the logical conclusion that it intended that the same standard of proof be applied to all the types of discrimination set forth in CFEPA.

Accordingly, we are persuaded that the motivating factor test, and not the but-for test, remains the applicable causation standard for claims of discrimination under CFEPA, regardless of the federal precedent

established in *Gross* and its progeny.

### B

Having concluded that the proper causation standard is the motivating factor test, we turn to the plaintiff's claim that the court failed to apply that test to her CFEPA claim. As stated earlier, the court found that the plaintiff had not proven "that the reason she was not hired by the defendant was *because of* her hearing disability . . . ." (Emphasis added.) The plaintiff argues on appeal that the court's use of the phrase "because of" indicates that the court incorrectly reviewed the plaintiff's disability discrimination claim according to the but-for causation standard. We disagree.

Whether the court applied the correct legal standard to the parties' claims is a question of law subject to our plenary review. *United Public Service Employees Union, Cops Local 062* v. *Hamden*, 209 Conn. App. 116, 123, 267 A.3d 239 (2021).

Nowhere in the court's memorandum of decision did it state which causation test it was applying. Instead, the court merely stated that the plaintiff could not prevail because she had failed to prove that she was not hired *because of* her hearing disability. As previously discussed, although federal precedent has recently associated the phrase "because of" with the but-for test, the phrase is not inconsistent with a court's application of the motivating factor test.[5] In fact, both our Supreme Court and this court have interpreted the "because of" language of CFEPA as incorporating the motivating factor test.

Moreover, the language of the court's memorandum of decision is completely consistent with its application of the motivating factor test. The court found that the plaintiff "has not proven . . . that the reason she was not hired by the defendant was because of her hearing disability, or that the defendant was unwilling to accept her as an employee with hearing aids as a reasonable accommodation. Rather, the court finds that the reasons given by the defendant for not hiring the plaintiff . . . were not due to intentional discrimination because of the plaintiff's disability." The court's findings make clear that it concluded that the plaintiff had failed to prove that her hearing disability played *any* role in the defendant's decision not to hire her and, therefore, was not a motivating factor. This conclusion is further supported by the fact that the court credited Sergeant's testimony that she decided not to hire the plaintiff because she had concerns about the plaintiff's work history and felt threatened by the fax from Treadwell-Green, and that her decision had nothing to do with the plaintiff's hearing disability. Accordingly, we conclude that the court applied the correct causation standard to the plaintiff's discrimination claim.

## II

The plaintiff's second claim on appeal, although not entirely clear, appears to be twofold. First, the plaintiff claims that the court erred when it refused to find that certain statements in the defendant's pretrial brief were binding judicial admissions. Moreover, the plaintiff further contends that had the court properly considered those statements to be judicial admissions, it would have concluded that the defendant's purported reason for not hiring the plaintiff was pretextual and that the real reason she was not hired was because of her hearing disability. Second, the plaintiff claims that because the defendant gave so many different reasons for why it did not hire the plaintiff, the court's finding that the plaintiff had failed to prove that the defendant failed to hire her because of her hearing disability is clearly erroneous. We are not persuaded by either claim.

The following additional procedural history is relevant to these claims. Over the course of the litigation, the defendant gave several explanations for why it did not hire the plaintiff. In Sergeant's affidavit in support of the defendant's motion for summary judgment, she attested that the plaintiff "was not hired due to large gaps in her employment history and her evasive answers regarding that employment history," as well as because of the fax that Treadwell-Green sent following the plaintiff's interview. Similarly, in response to an interrogatory submitted by the plaintiff asking the defendant to "[s]et forth in full detail the reason or reasons for not hiring the plaintiff," the defendant stated: "Plaintiff was not hired due to her lack of work history and experience. Plaintiff could not or would not provide an explanation for her lack of work history. Within thirty minutes of leaving the interview, Defendant received, via facsimile, a document with the subject line 'Interviewing Skills' and 'Discrimination Laws Regarding Disabilities From Employers Receiving Federal Funding.' Defendant viewed this facsimile as a threat of litigation from Plaintiff."

In the defendant's pretrial brief, however, the defendant stated that it did not hire the plaintiff because: "Based upon the defendant's interview with the plaintiff, during which the plaintiff was wearing her hearing aids, the defendant believed that the plaintiff would be unable to hear her clients and as such, the defendant believed that the plaintiff could not perform the essential functions of the job." The defendant further stated that "the defendant will show that it needs to protect its clients, and has acted in good faith upon that belief. It is essential that a home health aide be able to hear clients in their homes. An inability to hear a client would place that client at risk and in danger if she needed help. This is a legitimate nondiscriminatory reason for the decision not to hire the plaintiff."

At trial, the plaintiff implored the court to find that the statements in the defendant's pretrial brief concerning the reasons for why the plaintiff was not hired were binding judicial admissions that the plaintiff's hearing disability was a motivating factor in the defendant's decision not to hire her. The court refused to do so, stating: "The plaintiff's argument that the court should consider a statement in the defendant's pre-trial brief as a judicial admission is without merit. The role of the trial judge in a trial to the court is to decide the facts of the case by a preponderance of the admissible evidence presented in court, not by the arguments of counsel before any evidence is presented." The plaintiff also argued that the court should reject the explanation Sergeant offered at trial in light of the defendant's varying explanations pretrial for its failure to hire the plaintiff. The court clearly rejected this argument because it found Sergeant's trial testimony to be credible and persuasive. We address each claim in turn.

A

We first consider the plaintiff's claim that the statements in the defendant's pretrial brief alleging that the plaintiff was not hired because of concerns that her hearing impairment could endanger her clients were judicial admissions. "Judicial admissions are voluntary and knowing concessions of fact by a party or a party's attorney occurring during judicial proceedings. . . . They excuse the other party from the necessity of presenting evidence on the fact admitted and are conclusive on the party making them. . . . The statement relied on as a binding admission [however] must be clear, deliberate and unequivocal. . . . The distinction between judicial admissions and mere evidentiary admissions is a significant one that should not be blurred by imprecise usage. . . . While both types are admissible, their legal effect is markedly different; judicial admissions are conclusive on the trier of fact, whereas evidentiary admissions are only evidence to be accepted or rejected by the trier. . . .

"In contrast with a judicial admission, which prohibits any further dispute of a party's factual allegation . . . [a]n evidential admission is subject to explanation by the party making it so that the trier may properly evaluate it. . . . Thus, an evidential admission, while relevant as proof of the matter stated . . . [is] not conclusive. . . . The trier of fact is free to give as much weight to [an evidential] admission as, in the trier's judgment, it merits, and need not believe the arguments made regarding the statement by one side or the other." (Internal quotation marks omitted.) *Bowen* v. *Serksnas*, 121 Conn. App. 503, 518 n.12, 997 A.2d 573 (2010); see also *Northeast Builders Supply & Home Centers, LLC* v. *RMM Consulting, LLC*, 202 Conn. App. 315, 338, 245 A.3d 804 ("[f]actual allegations contained *in pleadings upon which the cause is tried* are considered judicial

admissions and hence irrefutable as long as they remain in the case" (emphasis in original; internal quotation marks omitted)), cert. denied, 336 Conn. 933, 248 A.3d 709 (2021).

Our standard of review of a trial court's failure to recognize a statement as a judicial admission depends on the issue before the court. Whether a statement in a pleading amounts to a judicial admission involves the interpretation of the pleading, which presents a question of law as to which our review is plenary. Id., 339. Where, however, the claimed judicial admission is a statement made outside of the pleadings, for example a representation by a party's attorney to the court, context surrounding the statement may be important. In such circumstances, "[a] court's determination of whether a particular statement made by a party in litigation is a judicial admission involves a factual determination." *National Amusements, Inc.* v. *East Windsor*, 84 Conn. App. 473, 482, 854 A.2d 58 (2004). In the present case, the alleged judicial admissions were set forth in the defendant's pretrial brief. Although the brief was not a pleading, it could be argued that any unequivocal concession contained therein is more akin to a concession in a pleading than it is to an oral representation made by counsel and, therefore, should be subject to plenary review. Having said that, argumentative statements in a pretrial brief, like the ones at issue in this case, are part of the advocacy process that should be considered in the context of other positions and representations the party or its counsel has made to the court. Which standard of review we apply here is unimportant because even under a plenary review it is clear that the statements at issue do not qualify as judicial admissions.

Statements made in a party's pleadings are unquestionably judicial admissions. *Northeast Builders Supply & Home Centers, LLC* v. *RMM Consulting, LLC*, supra, 202 Conn. App. 338. For example, if in its answer a defendant admits an allegation pleaded by the plaintiff in its complaint, the defendant is deemed to have admitted the allegation and the plaintiff need not present any evidence to prove the allegation at trial. In the present case, there is no claim that the defendant made such an admission in its answer. As previously noted, the statements in the present case on which the plaintiff relies were made in the defendant's pretrial brief, not in a pleading. Nevertheless, the plaintiff argues that statements made by the defendant's counsel to the court outside of the pleadings can constitute judicial admissions. We agree that it is possible that in certain circumstances an attorney's unequivocal representations of facts on behalf of his client can constitute a judicial admission. See *National Amusements, Inc.* v. *East Windsor*, supra, 84 Conn. App. 483 (court considered but rejected claim that counsel's concession was judicial admission because of context in which concession

was made); *Macy* v. *Lucas*, 72 Conn. App. 142, 153, 804 A.2d 971 (court considered whether statements in closing were judicial admission as to plaintiff's injuries and concluded that "[n]o reasonable view of the defendants' closing argument favors the plaintiff's claim that the defendants made a judicial admission through their statements"), cert. denied, 262 Conn. 905, 810 A.2d 272 (2002). For example, where a defendant's counsel in a pretrial brief or in an opening statement unequivocally concedes that the defendant is liable for the plaintiff's injuries and the only issue in dispute is damages, it is appropriate for the court to treat such a concession as a judicial admission.

In the present case, the defendant made no such "clear, deliberate and unequivocal" or "voluntary and knowing concessions of fact." *Bowen* v. *Serksnas*, supra, 121 Conn. App. 518 n.12. Instead, the defendant set forth the arguments it intended to make based on the evidence it expected to be admitted at trial. Indeed, the defendant prefaced the statements made in its pretrial brief on which the plaintiff relies by explicitly referring to them as arguments, stating that the "[d]efendant will *argue* that it believed that the plaintiff was not qualified to perform the essential functions of the job [and] that the defendant had legitimate business reasons for its failure to hire the plaintiff . . . ." (Emphasis added.) Previewing arguments that a party anticipates making is not the same as clearly and unequivocally stating a fact. The defendant here did the former, not the latter, in its pretrial brief. See *Straw Pond Associates, LLC* v. *Fitzpatrick, Mariano & Santos, P.C.*, 167 Conn. App. 691, 709, 145 A.3d 292 (statements in party's brief were not judicial admissions), cert. denied, 323 Conn. 930, 150 A.3d 231 (2016).

For these reasons, we conclude that the statements the defendant made in its pretrial brief were argumentative in nature and thus constituted, at most, evidentiary admissions that the court was free to accept or disregard. See *Bowen* v. *Serksnas*, supra, 121 Conn. App. 518 n.12 (evidentiary admissions represent question for trier of fact and are not conclusive).

B

We next consider the plaintiff's argument that the court failed to give sufficient weight to the different explanations offered by the defendant for not hiring the plaintiff when it concluded that she failed to prove that her disability was a motivating factor for the decision not to hire her. Essentially, the plaintiff argues that the court's finding that the plaintiff failed to prove that she was not hired because of her hearing disability was clearly erroneous. "A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been

committed. . . . In making this determination, every reasonable presumption must be given in favor of the trial court's ruling." (Internal quotation marks omitted.) *Commissioner of Transportation* v. *Lagosz*, 189 Conn. App. 828, 841, 209 A.3d 709, cert. denied, 333 Conn. 912, 215 A.3d 1210 (2019).

The plaintiff is correct that the defendant's reasons for why it did not hire her were different over the course of the proceedings. Because of the varying explanations propounded by the defendant, however, it was up to the court to weigh the evidence, to consider the credibility of the parties, and to decide the facts of the case based on all of that information, not just the particular statements on which the plaintiff focuses. See, e.g., *State* v. *Thompson*, 307 Conn. 567, 575, 57 A.3d 323 (2012) ("the weighing of the evidence is the province of the trial court"); *State* v. *Trine*, 236 Conn. 216, 227, 673 A.2d 1098 (1996) ("[t]he determination of a witness' credibility is the special function of the trial court" (internal quotation marks omitted)). The court here did that and concluded that the plaintiff had failed to prove that "the reason she was not hired . . . was because of her hearing disability." This conclusion was based in large part on the evidence that the defendant presented at trial, including Sergeant's testimony, which the court explicitly credited, that she did not hire the plaintiff because of the gaps in her employment history, apprehensions over whether she would be a reliable employee, and concerns raised by the fax that Treadwell-Green sent after the plaintiff's interview.

Given this testimony, there was evidence in the record to support the court's finding that the plaintiff had failed to prove that she was not hired because of her disability. Thus, regardless of the different statements that the defendant made in its pretrial brief, we cannot say that the court's finding that the plaintiff failed to prove her discrimination claim was clearly erroneous.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The plaintiff initially filed a complaint against the defendant with the Commission on Human Rights and Opportunities (commission). Pursuant to General Statutes § 46a-100, the plaintiff obtained a release of jurisdiction from the commission before she filed the complaint at issue in the present case.

[2] See *Texas Dept. of Community Affairs* v. *Burdine*, 450 U.S. 248, 252–56, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981); *McDonnell Douglas Corp.* v. *Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2 668 (1973).

[3] The claim in *Forvil* was brought under General Statutes § 46a-64, which prohibits discrimination in public housing accommodation "because of" the same traits that are identified in § 46a-60.

[4] More specifically, Title VII prohibits discrimination on the basis of race, color, religion, sex, and national origin; see 42 U.S.C. § 2000e et seq. (2018); the ADEA prohibits discrimination on the basis of age; see 29 U.S.C. § 621 et seq. (2018); and the ADA prohibits discrimination on the basis of physical disability. See 42 U.S.C. § 12101 (2018).

[5] We also note that the court in this case, *Honorable A. Susan Peck*, judge trial referee, has held in other cases that the proper causation standard under the act is the motivating factor test, even in light of the conflicting

decision in *Gross*. See, e.g., *Wagner* v. *Board of Trustees*, supra, Superior Court, Docket No. CV-08-5023775-S.

_____